# EXHIBIT 2

**THE EASTERN CARIBBEAN SUPREME COURT
IN THE COURT OF APPEAL**

**ANTIGUA AND BARBUDA**

**ANUHCVAP2023/0028**

**BETWEEN:**

**YULIA GURIEVA-MOTLOKHOV**

Appellant/Respondent

**and**

(1) **THE PORT MANAGER OF THE PORT AUTHORITY OF ANTIGUA AND BARBUDA**
(2) **THE DIRECTOR OF THE ANTIGUA AND BARBUDA DEPARTMENT OF MARINE SERVICES AND MERCHANT SHIPPING**
(3) **ATTORNEY GENERAL OF ANTIGUA AND BARBUDA**

Respondents/Counter-Appellants

**Before**:

| | |
|---|---|
| The Hon. Mde. Justice Vicki-Ann Ellis | Justice of Appeal |
| The Hon. Mr. Gerard St. C Farara | Justice of Appeal [Ag.] |
| The Hon. Mde. Justice Esco L. Henry | Justice of Appeal [Ag.] |

**Appearances**:

Mr. Robin Barclay, KC with him Dr. David Dorsett and Ms. Leandra Smith for the appellant/respondent.
Mr. Anthony Astaphan, SC with him Mrs. Carla Brookes-Harris, Ms. Alicia Aska, Ms. Joy Dublin, Ms. Rose-Anne Kim and Mr. Zachary Phillips for the respondents/counter-appellants.

---

2023:    September. 22;
         November. 22.

---

*Interlocutory appeal – Section 3 and 9 of the Constitution of Antigua and Barbuda – Constitutional challenge against compulsory acquisition of property without compensation – Appeal against judge's refusal to grant interim injunctive relief – Test for injunctive relief in public law – Whether the learned judge erred in holding that the Port Authority (Amendment)*

1

*Act was presumptively constitutional – Whether the learned judge erred by determining that the appellant had delayed unnecessarily in launching her claim – Whether the learned judge erred by holding that the appellant could not rely on any sentimental value in the vessel – Whether the learned judge erred in ruling that the vessel would continue to pose a risk of environmental damage if an injunction was granted – Presumption of constitutionality - Costs*

On 15th June 2023, the appellant, Yulia Gurieva-Motlokhov filed a constitutional claim against the Port Manager, the Director of the Antigua and Barbuda Department of Marine Services and Merchant Shipping and the Honourable Attorney General in which she challenged the constitutionality of the Port Authority Amendment Act ('the Act'). She also applied for interim injunctive relief to restrain the sale of a yacht, *M/Y Alfa Nero* (the vessel) and for associated interim declarations. The learned judge ruled that there was a serious issue to be tried as to whether the appellant holds a propriety interest in the vessel and artwork onboard and as to the constitutionality of the impugned provision of the Act. The learned judge did not grant the requested interim injunction and declaratory reliefs.

The appellant appealed, contending that, *inter alia*, the learned judge erred in holding that she had delayed unnecessarily in making the application and that the delay justified the denial of injunctive relief; by ruling that she could not rely on the vessel's acclaimed sentimental value because she did not show that she had an interest in it, and in holding that the Act was presumptively constitutional.

The respondents opposed the appeal, submitting that the learned judge properly exercised his discretion concerning the balance of convenience including delay, and by holding that damages was an adequate remedy, but counter-appealed on 20th July 2023 challenging the learned judge's finding that there was a serious issue to be tried. They contended that he erred by failing to rule that the appellant was not entitled to launch a constitutional claim alleging a breach of her right to protection under the Constitution.

The issues raised in the appeal were (1) whether the learned judge erred in the exercise of his discretion by refusing to grant the interim injunction and, if not, whether he erred by refusing to make an order requiring the respondents to inform purchasers of the appellant's and the vessel owner's prior interest; and (2) whether the learned judge erred in holding that the impugned provision of the Act is presumptively unconstitutional.

**Held**: dismissing the appeal and affirming the order of the learned judge in its entirety, and dismissing the counter-appeal, with no order as to costs, that:

1. An appeal on the exercise of judicial discretion by a judge will not be allowed unless the appellate court is satisfied that in exercising his or her discretion, the judge erred in principle either by failing to take into account or by giving too little or too much weight to relevant factors and considerations, or by taking into account or being influenced by irrelevant factors and considerations; and that as a result of the error or degree of the error in principle, the trial judge's decision exceeded the generous ambit with which reasonable disagreement is possible and may therefore be said to be clearly or blatantly wrong.

**Dufour and Others v Helenair Corporation Ltd and Others** (1996) 52 WIR 188 applied.

2. To be successful, an applicant for an interim injunction must satisfy the judge of three things. Firstly, he must present a good arguable case by demonstrating that there is a serious issue to be tried between the parties. Secondly, the court will consider whether the balance of convenience favours granting or refusing injunctive relief pending trial and, thirdly, the court must be persuaded that an award of damages to the respondent will not be an adequate remedy if the injunctive relief is granted and the respondent prevails at the substantive hearing. The same approach is taken in public law cases with the appropriate modifications necessary. It is an exceptional course for the court to restrain a public authority from enforcing an apparently valid law. A court would take such a course where, having regard to all the circumstances of the case, the court is satisfied that the challenge to the validity of the law is prima facie based and adoption of such an exceptional course is justified.

**American Cyanamid Co v Ethicon** [1975] UKHL 1 applied; **Beryl Isaac and others v Grenadian Hotel Limited** GDAHCVAP2017/0002 (delivered 15th December 2017, unreported) followed.

3. A review of the principles set down in **Convoy Collateral Ltd v Broad Idea International Ltd** and **Bacci v Green** illustrates that they do not introduce revolutionary developments on the test for interim injunctive relief. Rather, they affirm as being long established and settled the principles that the statutory test under section 24(1) of the **Supreme Court Act** for the grant of an injunction requires that there be '(i) an interest of the claimant which merited protection and (ii) a legal or equitable principle which justified exercising the power to order the defendant to do or not do something'. The new developments highlighted in those cases, (such as the practice of granting worldwide freezing injunctions) while exemplifying the principle that injunctive relief will be deployed in an appropriate case to protect the claimant's interest if it is justifiable by some legal or equitable principle, add nothing to the long-standing underlying application of the law and practice. Essentially, the court's power to grant injunctive relief had always been linked to whether the claimant has an interest that needs protection and whether a legal or equitable principle justified granting it in the particular case. This constitutes no recent development as suggested by the appellant.

**Convoy Collateral Ltd v Broad Idea International Ltd** [2021] UKPC 24 considered; **Bacci v Green** [2022] EWCA Civ 1392 considered.

4. Bearing the abovementioned principles in mind, Mrs. Gurieva-Motlokhov had advanced a good arguable case that section 38A of the **Act,** in breach of section 9 of the **Constitution**, could be construed as compulsorily taking away without compensation any proprietary interest that she may have in the vessel or artwork onboard. The learned judge overlooked no relevant matters in arriving at this determination and took no irrelevant factors into account. In view of his evaluative

assessment, on the material before him, he had adequate factual and legal bases to conclude that the issue regarding the constitutionality of section 38A, as well as the asserted proprietary interest, constituted a serious issue to be tried. Given the affidavit evidence and the learned judge's express reasons for his conclusion on the balance of convenience issue, it is clear that he had considered that the removal of the vessel was necessary to forestall further environmental damage to the harbour. As to whether the appellant could be compensated in damages for any loss of interest in the vessel and artwork, the learned judge considered that, regardless of how unique or valuable, the vessel attracted a monetary value for insurance purposes, and this would suffice if compensation had to be quantified. Further, in relation to the appellant's inaction between March 2022 and April 2023, the learned judge evidently considered that equity imposes a duty on an applicant to approach the court without delay when applying for interim relief ahead of a trial. He was entitled to take all of those factors into account in arriving at his decision. The learned judge had regard to the relevant surrounding circumstances and applicable legal principles and did not factor in irrelevant considerations. Therefore, there is no factual or legal basis to find on the application for injunctive relief that the learned judge erred in principle and had regard to irrelevant matters and, as a result, made a determination that was plainly wrong that would justify this court's interference with his decision.

5.    The presumption of constitutionality has been explained as follows: 'In some cases, it may be possible for a Court to decide from a mere perusal of an Act whether or not it was reasonably required. In other cases, the Act will not provide the answer to that question. In such cases, the proper approach is to presume, until the contrary appears or is shown, that all Acts' passed by parliament were reasonably required.' Arguably, a mere perusal of the impugned provisions in section 38A of the **Act** would be inadequate to determine whether the Port Manager's or Director's conduct was legally invalidated for unconstitutionality. Indeed, the issue of the appellant's avowed propriety interest in the vessel and artwork had not yet been decided and the respondents had not deployed their response to the claim. It would not have been apparent which, if any of the provisions under section 9 of the Constitution they might seek to invoke in defence of the charge of unconstitutionality relative to his conduct. Accordingly, the learned judge was entitled to apply the presumption of constitutionality to section 38A of the Act. He did not thereby err in law or in principle and as a result made a determination that is blatantly wrong that would merit reversal by this Court.

**AG v Antigua Times** [1975] UKPC 15 applied.

**JUDGMENT**

### Introduction

[1]    **HENRY JA [AG]**:  By this interlocutory appeal, Mrs. Yulia Gurieva-Motlokhov seeks an order reversing the learned judge's refusal to grant an interim injunction to restrain the Antigua and Barbuda port manager ('the Port Manager') from selling a yacht *M/Y Alfa Nero* ('the vessel') and certain works of art aboard it, in circumstances where the vessel was treated as abandoned pursuant to the **Port Authority (Amendment) Act**[1] ('**the Act**'). Mrs. Gurieva-Motlokhov alleged that she holds a proprietary interest in the vessel by virtue of being the sole discretionary beneficiary of the Tyne Trust and Flagstaff Trust, both of which were established under the law of Guernsey. The Trusts are said to respectively control the Flying Dutchman Ltd. ('FDOL') and Vita Felice Ltd. ('VFL') BVI-incorporated companies that respectively own the vessel and works of art.

[2]    On 15th June 2023, Mrs. Gurieva-Motlokhov filed a constitutional claim against the Port Manager, the Director of the Antigua and Barbuda Department of Marine Services and Merchant Shipping ('the Director') and the Honourable Attorney General[2] in which she challenged the constitutionality of the **Act**. She pleaded that it contravenes sections 3 and 9 of the **Constitution of Antigua and Barbuda ('the Constitution')**[3]. She also filed an application for interim injunctive relief to restrain the sale of the vessel and for associated interim declarations. The learned judge ruled that there was a serious issue to be tried as to whether Mrs. Gurieva-Motlokhov holds a proprietary interest in the vessel and artwork and as to the constitutionality of the impugned provision. He did not grant the requested interim injunctive and declaratory reliefs.

---

[1] Act No. 1 of 2023, amending Cap. 333 of the Laws of Antigua and Barbuda.

[2] Collectively 'the respondents'.

[3] Schedule 1 to the Antigua and Barbuda Constitution Order, Cap. 23 of the Laws of Antigua and Barbuda.

[3]      In this appeal, Mrs. Gurieva-Motlokhov contends among other things that the learned judge erred in holding that she had delayed unnecessarily in making the application and that the delay justified the denial of injunctive relief; by ruling that she could not rely on the vessel's acclaimed sentimental value because she did not show that she had an interest in it; and by holding that the **Act** was presumptively constitutional.

[4]      The respondents opposed the appeal. They submitted that the learned judge properly exercised his discretion concerning the balance of convenience including delay; and by holding that damages was an adequate remedy. They filed a counter-appeal on 20th July 2023 in which they challenged the learned judge's finding that there was a serious issue to be tried as to whether Mrs. Gurieva-Motlokhov has a proprietary interest in the vessel. They contended that he erred by failing to rule that she was not entitled to launch a constitutional claim alleging a breach of her right to protection of property under the **Constitution**.

[5]      The appellant argued that the counter-appeal is procedurally misconceived as it seeks to bring an end to her claim on a basis that was not argued before the learned judge. She submitted that there is a serious issue to be tried as to whether she has a sufficient interest to bring the constitutional claim under section 9 of the **Constitution**.

**Legislative Framework**

[6]      At this juncture, it is useful to outline the relevant legislative provisions. It is not disputed that the Court's statutory power to grant interim or permanent injunctive relief emanates from section 24(1) of the **Eastern Caribbean Supreme Court Act ('the Supreme Court Act')**[4]. It provides:

> '**24. Granting of mandamus, etc**
> (1)   A mandamus or injunction may be granted, or a receiver appointed, by an interlocutory order of the High Court or of a Judge thereof in all cases in which it appears to the Court or Judge to be just and

---

[4] Cap. 143 of the Laws of Antigua and Barbuda.

> convenient that the order should be made, and any such order may be made either conditionally or upon such terms and conditions as the Court of Judge thinks just.'

[7]     The **Constitution** is the supreme law of Antigua and Barbuda. Mrs. Gurieva-Motlokhov's case is based on sections 3 and 9. Section 3 is preambular in effect and outlines certain directive principles as to how the fundamental rights provisions in the **Constitution** are to be applied; while section 9 prohibits the compulsory acquisition of property without compensation. Section 9(1) provides:

> "(1) No property of any description shall be compulsorily taken possession of, and no interest in or right to or over property of any description shall be compulsorily acquired, except for public use and except in accordance with the provisions of a law applicable to that taking of possession or acquisition and for the payment of fair compensation within a reasonable time."

[8]     On 20th March 2023, the **Port Authority Act** was amended by the enactment of a new provision – section 38A, and it was published in the *Gazette* as required by law. Section 38A introduced additional powers that were exercisable by the Port Manager in relation to a vessel that is abandoned or is beneficially owned by a person who is the subject of sanctions by an ally or trading partner of the State of Antigua and Barbuda ('the State'). The Port Manager's new powers included the authority to investigate and satisfy himself as to whether it is appropriate to take possession of such a vessel and to dispose of it by auction. The section provides further that the net proceeds of any such auction are to be forfeited to the government of Antigua and Barbuda and in a case where the vessel or its beneficial owner is sanctioned, to the Consolidated Fund.

[9]     Two material sub-sections are (1) and (3) of section 38A. They state:

> '(1)   Where for any reason, a ship … has been seized, detained or abandoned in any Antigua and Barbuda harbour or near any Antigua and Barbuda harbour or tidal water, the Port Manager may –
>    (a) take possession of the ship or other seagoing vessel; and
>    (b) subject to subsections (4) and (5), sell the ship or other seagoing vessel by public auction or private treaty, provided the sale is not to a sanctioned individual or entity or a person suspected of being involved in criminal activity.

7

(2) …

(3) The proceeds of the sale of any ship or other seagoing vessel under This section –

    (a) may, after allowing for deductions of expenses relating to the maintenance of the ship while berthed in the harbour, and the expenses related to the removal, storage or sale of the vessel, be forfeited to the Government and be paid into the Consolidated Fund of Antigua and Barbuda;

    (b) in the case of a sanctioned vessel, shall be forfeited to the Consolidated Fund after allowing for the deductions of the expenses referenced at paragraph (a).

[10]    Sub-section (5) outlines the matters to be considered by the port manager before exercising the power under sub-section (1). So far as is relevant, it states:

'[5] The Port Manager shall, before exercising the power under subsection (1), satisfy himself that the ship or other seagoing vessel to be sold-

    (a) …

    (b) was seized or detained because the beneficial owner of the vessel or the operator of the vessel is a person that is or is believed to be the subject of sanctions imposed by a country that is an ally or trading partner of Antigua or Barbuda;

    (c) was at the time of its seizure or detention, involved or believed to be involved in trade or a related activity with or on behalf of a sanctioned country or person; or

    (d) has been abandoned; and

    (e) the vessel, if left in its current state-

        (i)    will deteriorate or further deteriorate;

        (ii)    is or is likely to pose a threat to the safety or security of the vessel and other vessels in the harbour;

        (iii)    is causing or is likely to cause environmental damage in the harbour and its surrounding areas; or

        (iv)    is or is likely to pose a threat to human health and safety.'

**Factual Background**

[11]    In the underlying claim, Mrs. Gurieva-Motlokhov asserts that the foregoing provisions in the **Act** are unconstitutional, as are the Port Manager's purported exercise of the power of sale by auction and the legislated forfeiture of the proceeds of sale. The relevant factual matrix is succinctly captured in the learned judge's

decision. I will borrow from that narrative[5] in the paragraphs immediately below, and supplement as necessary with other pertinent details.

[12]    The learned judge explained: 'In or about March 2022 the M/Y Alfa Nero "the vessel" a large pleasure yacht entered Falmouth Harbour, Antigua. It remains there to date.'

[13]    At that time, the vessel was listed as a blocked asset and subject to US sanctions pursuant to USA Executive Order 14020[6] which expressly blocked property with respect to alleged 'Specified Harmful Activities of the Government of the Russian Federation', on the basis that the ownership was linked to one or more Specially Designated Nationals and Blocked Persons (SDN) listed in the Order. One Andrey Yurev[7] was identified in the Executive Order as an SDN. The vessel was included by reason that Mr. Yurev was declared to be the beneficial owner of the vessel. The Honourable Attorney General Mr. Steadroy Benjamin attested to this in his affidavit[8].

[14]    The learned judge added: 'The Port Manager published a notice in the Gazette on 21st March 2023 pursuant to section 38A(4)(b) of the 2023 Act which stated that the vessel posed an imminent threat to the harbour and to other vessels and was a risk to the economy of Antigua and Barbuda. The notice further advised that should the owner fail to take all necessary steps to remove the vessel, the Port Manager would move to sell the same. The same notice was published in the Lloyd's List newspaper on 28th March 2023.

[15]    FDOL and VFL applied for leave for judicial review and injunctive relief[9] to challenge the Port Manager's decision to sell the vessel and the works of art aboard the vessel.

---

[5] With minor grammatical and other adjustments.
[6] Dated 15th April 2021.
[7] It emerged that this reference is to Mrs. Gurieva-Motlokhov's father, whose particulars she supplied in her affidavit.
[8] Filed on June 20th 2023; at para. 1.
[9] Claim No. ANUHCV2023/0185.

[16]    Leave was granted to the companies to file judicial review proceedings by the decision of [the High Court] made on June 8th 2023. However, injunctive relief was refused. The information disclosed by the respondents reveals that further applications for injunctive relief were subsequently refused by the Court of Appeal and the Privy Council respectively.

[17]    The applicant's solicitors wrote to the Port Manager by letter dated 10th April 2023 indicating the applicant's interest in the vessel by virtue of being a beneficiary of the Tyne Trust. The applicant alleges that there was no response to this letter.

[18]    Subsequent to [the] High Court's order refusing injunctive relief to FDOL and VFL, the Port Manager conducted an auction. The highest bid was made by Mr. Eric Schmidt a former CEO of Google. It appears that the sale has not been concluded, for reasons which are not relevant to … [the High Court] proceedings.'

[19]    On 15th June 2023, Mrs. Gurieva-Motlokhov commenced proceedings in the High Court for the referenced injunctive relief and for an order requiring the respondents to give notice to any proposed purchaser or bidder for the vessel, of the FDOL's prior interests and of her asserted proprietary interest. She also sought interim declarations that the vessel may not be registered as an Antiguan and Barbudan vessel under the **Merchant Shipping Act 2006**[10] and that such registration by the Director is unlawful until further order or determination of this matter.

[20]    In a hearing before the learned judge on 23rd June 2023, the parties presented affidavit testimony and fulsome arguments. The learned judge had before him the affidavit testimony of Mrs. Gurieva-Motlokhov[11], the Port Manager[12], the Honourable Attorney General[13] and Ms. Rose-Ann Kim[14].

---

[10] No. 1 of 2006 of the Laws of Antigua and Barbuda.
[11] Filed on 15th June 2023.
[12] Filed on 20th and 21st June 2023
[13] Filed on 20th June 2023.
[14] Filed on 22nd June 2023.

[21]    Mrs. Gurieva-Motlokhov asserted that she held a proprietary interest in the vessel and works of art by virtue of being the sole discretionary beneficiary of the Tyne Trust and the sole adult beneficiary of the Flagstaff Trust. She explained that Andrey Gregorievich Guryev was her father, that he had at one time been one of the beneficiaries of the Tyne Trust, as had her mother Evgenia Gurieva, her brother Andrey Andreevich Guryev and her grandmother Valentina Popova. She explained that her parents, brother and grandmother all ceased being beneficiaries by Deeds or Removal, Exclusion and Cessation executed respectively between 22nd December 2015 and 24th January 2022.[15] She averred that she is therefore the sole natural person with any kind of interest in the vessel.

[22]    She described in some detail the unique features of the *Alfa Nero* which places it in an exclusive class, with the distinction of being ranked number 2 in the Super Yacht World Magazine. She asserted that she had traveled on the yacht with other members of her family. From 2014 or 2015 when it was commercially registered, she chartered it, paying full market rates each time. She claimed that because of the great sentimental and personal value it holds for her, she would be inconsolable if she and her family were no longer able to use it.

[23]    Mrs. Gurieva-Motlokhov accepted that she does not own the vessel and is the only discretionary beneficiary of a trust that owns it indirectly. As such, she must ask the trustees to use it or she has to charter it. She sought to rely on Guernsey Trusts law to cement her claim to a proprietary interest in the vessel. She did not, however, adduce expert evidence on this point.

[24]    She acknowledged that her father was designated under UK sanctions on 6th April 2022 and US sanctions on 2nd August 2022; that her brother was designated under UK sanctions on 15th March 2022, EU sanctions on 9th March 2022 and US

---

[15] See para. 2.8 of Mrs. Gurieva-Motlokhov's affidavit filed on 15th June 2023 (Counter Respondent Appellant's Bundle pg. 15).

sanctions on 2nd August 2022; and that the vessel was designated under US sanctions on 2nd August 2022 and de-designated on 1st June 2023.

[25]    Mrs. Gurieva-Motlokhov indicated that she was aware of the steps taken between March 3rd 2023 and June 2023 by the Antigua and Barbuda Parliament to enact the **Act** and by the Port Manager and other authorities under the **Act** to secure the vessel's delisting as an SDN. She alluded to documents she had submitted in a Confidential Schedule to the court to demonstrate her capacity to meet current and future outgoings of the vessel and satisfy any demands if required to provide an undertaking in damages.

[26]    The Port Manager averred that since March 2022, 'the owners of the vessel have not made any financial arrangements for the payment of scheduled maintenance of the vessel, docking and operational fees, and the payment of salaries and living expenses for the crew. It is therefore not being 'maintained' by them. He referred[16] to and relied on certain matters which were addressed by the vessel's captain Christopher Lewis in an affidavit sworn on 16th March 2023, regarding the vessel's condition and threats posed to the environment by its presence at the harbour in that State.[17] In particular, the Port Manager stressed that nothing was advanced by Mrs. Gurieva-Motlokhov to 'contradict the grave threat to the environment' highlighted by him in his affidavit filed in claim No. ANUHCV2023/0185. He stated that in light of the vessel being uninsured and deregistered, no insurance coverage would be available in the event of 'damage to vessel, person, marina, business or the State.'

[27]    The Honourable Attorney General asserted[18] further that on application by the State, the vessel was delisted by the USA from among the blocked property of SDN[19] by letter dated 1st June 2023. He explained that the Government applied for the

---

[16] At para. 9 b of the Port Manager's affidavit filed on 20th June 2023.
[17] He exhibited Captain Lewis' affidavit.
[18] At paras. 2 and 3 of his affidavit filed on 20th June 2023.
[19] Effected by Executive Order 14024 of 15th April 2021.

delisting to permit it to sell the vessel pursuant to a license issued by the Office of Foreign Assets Control ('OFAC'). He asserted further that one of the conditions of the licence was that the vessel 'must not be sold to or fall under the ownership, care or control of any sanctioned person or entity or person connected to a sanctioned person or entity.'

[28]    In summary, the respondents' case was that the vessel posed a substantial environmental risk to Falmouth Harbour because it was uninsured and in a state of disrepair. The Port Manager indicated that leaving the vessel in its current condition and location could result in irreparable damage to the marine environment and pose a risk to the navigation of other vessels in the area.

### Determination by the Learned Judge

[29]    In a decision rendered on June 29th 2023, the learned judge found that Mrs. Gurieva-Motlokhov's self-proclaimed proprietary interest could arguably be sustained to the extent that section 38A might be found to take away that right without compensation and it could thereby be held to contravene section 9(1) of the **Constitution**. However, relying on **Ronald Green v Petter St. Jean**[20] he ruled that having not led evidence as to the foreign trusts law to which she referred in submissions, Mrs. Gurieva-Motlokhov has not proved that she has such proprietary interest and at that stage, it could not be held conclusively that she has any interest that is protected by section 9 of the **Constitution**. Further, in light of the exceptions permitted under section 9(4) of the **Constitution**, even if she held such a proprietary interest, the issue of whether any such interest was caught by those exceptions, or whether the legislated measures were reasonably justifiable in a democratic society could only be ventilated and resolved at the trial.

[30]    In arriving at this conclusion, the learned judge had regard to the legal principles in **American Cyanamid Co v Ethicon**[21] and **Belize Alliance Conservation Non-**

---

[20] DOMHCVAP2012/0001 (delivered 11th March 2013, unreported) at para. 41.
[21] [1975] UKHL 1.

**Governmental Organizations v Department of the Environment**[22]. He quoted with approval an extract from the latter case at paragraph 36 which provides guidance as to the grant of injunctive relief in public law cases. There Lord Goff opined:

> 'I myself am of the opinion that in these cases, as in others, <u>the discretion conferred upon the court cannot be fettered by a rule</u>; <u>I respectfully doubt whether there is any rule that</u>, in cases such as these, <u>a party</u> challenging the validity of a law <u>must</u> – to resist an application for an interim injunction against him, or <u>to obtain an interim injunction restraining the enforcement of the law – show a strong prima facie case that the law is invalid</u>. It is impossible to foresee what cases may yet come before the courts; I cannot dismiss from my mind the possibility (no doubt remote) that such a party may suffer such serious and irreparable harm in the event of the law being enforced against him that it may be just or convenient to restrain its enforcement by an interim injunction even though so heavy a burden has not been discharged by him. <u>In the end, the matter is one for the discretion of the court, taking into account all the circumstances of the case</u>. Even so, the court should not restrain a public authority by interim injunction from enforcing an apparently authentic law unless it is satisfied, having regard to all the circumstances, that the challenge to the validity of the law is, prima facie, so firmly based as to justify so exceptional a course being taken.'[23] (underlining mine).

[31]    The learned judge held that it was not possible to conclude at this stage whether sections 3 or 9 of the **Constitution** had been contravened. He was nonetheless satisfied that there was a serious issue to be determined as to whether Mrs. Gurieva-Motlokhov has an interest in or right to or over property in the vessel as contemplated by section 9 of the **Constitution**; and with respect to the constitutionality of the impugned **Act**. He found that the balance of convenience favoured maintaining the status quo in light of the risk of ecological damage raised by the Port Manager, the lack of insurance and the vessel's state of disrepair. He ruled that while damages would be adequate in any event to compensate Mrs. Gurieva-Motlokhov for any loss she might suffer, the same could not be said in respect of damages to the respondents. He therefore refused Mrs. Gurieva-

---

[22] [2004] UKPC 6.

[23] At pg. 674

Motlokhov's application for injunctive and declaratory relief and scheduled the substantive hearing for September 20th 2023.

**The Appeal**

[32]    Being dissatisfied with the learned judge's decision, by Notice of Appeal filed on 12th July 2023, Mrs. Gurieva-Motlokhov advanced six grounds of appeal. She contended that the learned judge erred in holding that the impugned **Act** was presumptively constitutional; in finding that she had delayed unnecessarily in launching her claim; by holding that she could not rely on any sentimental value in the vessel because she did not show that she held any interest in it; in ruling that the vessel would continue to pose a risk of environmental damage, remain uninsured and would not be properly maintained if an injunction was granted; and in not granting the requested injunctive relief.

**Issues**

[33]    In the main, the appeal and cross-appeal touch and concern the learned judge's exercise of discretion to refuse the interim injunction and declarations. An ancillary issue has to do with the order being sought to alert a new owner to the prior interests. The remaining contentions relate to the presumption of constitutionality. Two issues therefore arise for consideration:

> (1)    Whether the learned judge erred in the exercise of his discretion by refusing to grant the interim injunction; and if not, whether he erred by refusing to make an order requiring the respondents to inform purchasers of the appellant's and the vessel owner's prior interest.

> (2)    Whether the learned judge erred in holding that the impugned **Act** is presumptively unconstitutional.

**Appellants Submissions**

[34]    In relation to the first ground of appeal, on Mrs. Gurieva-Motlokhov's behalf, learned counsel Dr. Dorsett submitted that the learned judge erred by ruling that the vessel was uninsured, was not properly maintained and would continue to pose a risk of

15

environmental damage if an injunction was granted to prevent its sale. He argued that Mrs. Gurieva-Motlokhov was not proposing that no immediate action be taken but rather was indicating that she had the capacity to and intended to discharge the vessel's debts and restore it to a state of good repair. He contended that in any event, the government had announced that the vessel was insured after it was taken into possession by the local authorities and this is borne out by Mrs. Gurieva-Motlokhov's affidavit testimony. Therefore, the learned judge was required to approach this part of the evidence with caution. He added that the evidence did not disclose and the learned judge did not explain why it was necessary to sell the vessel to avoid the risk of environmental damage.

[35]     A further contention was that the learned judge erred by weighing the options of doing nothing against permitting the sale of the vessel. Learned counsel stated that instead, he should have considered whether granting the injunction or selling the vessel favoured the balance of convenience. He argued that of relevance was the fact that the authorities were taking care of the vessel and the appellant was willing to assist with those expenses. Had the judge taken this approach he reasoned, he would have granted the injunction. He submitted further that the risk posed to the Port Manager and the local authorities by an injunction was not environmental damage but a lost or delayed sale which could be compensated by an undertaking in damages.

[36]     Learned counsel argued that no evidence was led that addressed the type of damage that was feared or that demonstrated that it could not be remedied. He contended that damage to the environment is not itself unique and is susceptible to being remedied by the expenditure of funds. Accordingly, the learned judge was wrong to conclude that an undertaking in damages from Mrs. Gurieva-Motlokhov would have been inadequate.

[37]     He criticized the learned judge's holding that Mrs. Gurieva-Motlokhov had delayed unnecessarily in seeking relief and that the delay justified the refusal of injunctive

relief. He highlighted Mrs. Gurieva-Motlokhov's evidence that she sought to make payments to and support the vessel up to late 2022 but was stopped from doing so by the Tyne Trust; and that the trustee had also sought licences to fund and maintain the vessel. In this regard, he argued that essentially, because of the sanctions that remained in force until June 2023, there was very little that she could do before then in relation to the vessel. To illustrate this, he pointed to her testimony that although she had purchased a replacement part to repair the sewage system, it could not be delivered to the vessel in the face of the sanctions that were in force at the time.

[38]    Learned counsel argued that accordingly, the learned judge's reliance on **Durity v Attorney-General**[24] is misplaced because, while Durity could have had recourse to adequate redress by a timely invocation through the 'court's ordinary, non-constitutional jurisdiction' such an avenue was not open to Mrs. Gurieva-Motlokhov under section 38A of the **Act**.

[39]    With respect to the second ground of appeal, learned counsel accepted that the learned judge was correct to conclude that the appellant did not seek a stay of the sale within the timelines stipulated in section 38A of the **Act** – i.e. between March 2022 and April 2023. He stated however, that the judge was wrong in finding that there was no satisfactory explanation for her inaction. Learned counsel submitted that she was unable to take action under section 38A of the **Act** because the vessel's owner or agent are the only persons authorized by section 38A(6) to invoke that provision, and she was neither. He argued that in any case, that route was not a necessary pre-condition to initiating these proceedings.

[40]    Learned counsel argued that contrary to the learned judge's finding that Mrs. Gurieva-Motlokhov had taken no steps until after the court made its decision on June 8th 2023 refusing interim relief on application by the owner of the vessel in a separate case[25], she had by then written to the Port Manager and Attorney General

---

[24] (2002) 60 WIR 448.

[25] In ANUHVCH2023/0185.

on 10th April 2023 but had received no response to her letter. He argued that the present proceedings might have been avoided if they had replied to her. Learned counsel argued that such a finding was therefore unfair because on any view of the facts, the appellant had acted swiftly. Furthermore, there was no inability on her part to either repair the vessel or pay its debts as was held with respect to the owner/trustee in the other case.

[41]    Learned counsel stated further that the learned judge erred by not considering whether granting relief would be detrimental to good administration or cause substantial hardship to or substantially prejudice the rights of any person. This was a requirement under CPR 56.5(2) when a decision is being made as to whether to grant or refuse relief in an administrative law case. He submitted that had the learned judge factored this into his determination he would have concluded that the sale of the vessel was not promoting good administration and that the hurried sale was in no one's interest given that it was doubtful that the authorities had the ability to give a good title. He reasoned that in fact, they would be likely to get a better price if the court makes a ruling in their favour on that issue. However, if the court rules against them substantial litigation will probably ensue among the present parties to the case and the purchaser.

[42]    On the matter of constitutional breach and delay, learned counsel argued that Mrs. Gurieva-Motlokhov's constitutional rights have been infringed by the Port Manager's impugned conduct under the **Act**. He added that she has done nothing that would disentitle her to a remedy on the grounds of laches or delay and further, there has been no reliance by the respondents to their detriment between 10th April and 15th June 2023.

[43]    Citing **Fisher v Brooker**[26] in support, learned counsel quoted the following from Lord Neuberger's speech:

---

[26] [2009] UKHL 41 at para. [64].

"[L]aches is an equitable doctrine, under which delay can bar a claim to equitable relief. In the Court of Appeal, Mummery LJ said that there was "no requirement of detrimental reliance for the application of acquiescence or laches" [2008] Bus LR 1123, para. 85. Although I would not suggest that it is an immutable requirement, some sort of detrimental reliance is usually an essential ingredient of laches, in my opinion. In Lindsay Petroleum Co v Hurd (1874) LR 5 PC 221, 239-240, Lord Selborne LC, giving the opinion of the Board, said that laches applied where 'it would be practically unjust to give a remedy', and that, in every case where a defence "is founded upon mere delay … the validity of that defence must be tried upon principles substantially equitable". He went on to state that what had to be considered were the 'length of the delay and the nature of the acts done during the interval, which might affect either party, and cause a balance of justice or injustice in taking the one course of the other, so far as relates to the remedy'."

[44]    As to the third ground of appeal, learned counsel submitted that the learned judge's findings that Mrs. Gurieva-Motlokhov had an arguable case based on her proprietary interest, sufficient to underpin the constitutional claim up to trial, was inconsistent with his ruling that she could not rely on aspects of that arguable interest to show that damages were inadequate. He submitted that those two conclusions were irrational and irreconcilable.

[45]    Regarding the learned judge's ruling that she could not rely on any sentimental value in the vessel unless she could prove an interest in it, learned counsel submitted that the decision in **McKenzie Frank v Attorney General**[27] on which the judge relied, did not deal with 'sentimental value' and no known decision supports such a holding. He added that on this issue, the learned judge appears to have overturned his earlier determination in case no. ANUHCV2023/0185 where he held 'in the case of the vessel as a luxury vessel it may have sentimental value to the persons who regularly enjoy it,' as opposed to those who have a proprietary interest in it.

[46]    The fourth ground of appeal challenged the learned judge's holding that the **Act** is presumptively constitutional. Learned counsel argued that even if a general

---

[27] [2020] ECSCJ No. 215; [2022] UKPC 25.

presumption of constitutionality is established by **AG v Antigua Times Ltd**[28] on which the learned judge relied[29], section 38A of the **Act** makes no provision for payment of compensation to those who have a prior interest in the vessel and therefore cannot be justified under section 9(1) or 9(4) of the **Constitution**. He submitted that those sub-sections respectively provide for a) payment of such compensation; b) forfeiture in consequence of a breach of law or c) such action as is reasonably necessary because of property that is in a dangerous state or likely to be injurious to human, animal or plant animal health. He argued that in the circumstances, section 38A is not presumptively constitutional and the learned judge erred in so holding.

[47]   Learned counsel stated that it is now settled that an applicant for an interim injunction that is based on the alleged unconstitutionality of a law, does not have to show a strong *prima facie* case that the impugned law is unconstitutional. He noted that while the learned judge accepted this to be the correct legal position as articulated in **Belize Alliance of Conservation Non-Governmental Organisations v Dept of the Environment (Belize)**[30] he erred by applying a higher standard than articulated by the Law Lords when he ruled:

> 'Unless the law is declared to be unconstitutional it is to be construed as giving the Port Manager the power to do everything reasonably incidental to facilitating- the sale. Thus, this is a matter for trial and is not appropriate for interim relief.'[31]

[48]   Learned counsel reasoned that an analysis that proposes that statutes are to be presumed to be constitutional and that such a question is a matter for trial and not for interim relief would suggest that no interim injunction could ever be granted to restrain the enforcement of an unconstitutional law. This is plainly wrong, he argued. The learned judge was required to approach the question on the basis that there

---

[28] Privy Council Appeal No. 9 of 1974; [1975] 3 W.L.R. 232; [1975] UKPC 15; [1976] AC 16 (PC).
[29] See para. 32 of the Judgment.
[30] [2003] UKPC 63 in which R v Secretary of State for Transport, ex parte Factortame [1991] 1 AC 603, HL was cited and applied.
[31] At para. [36] of the decision.

was a serious issue to be tried and not on a presumption that the law was constitutional.

[49]     As regards ground 5 of her appeal, Mrs. Gurieva-Motlokhov submitted simply that based on the foregoing arguments the learned judge erred in refusing to grant the interim injunctive reliefs as prayed for.

[50]     By ground 6 of the appeal the learned judge's decision not to grant an order mandating that the purchaser of the *M/Y Alfa Nero* be informed of the appellant's and the owners' prior interests, is criticized. Learned counsel dismissed as incoherent, the judge's statement that such an order was being denied because among other things it would impact third parties who had not been given an opportunity to be heard in these proceedings. He argued that such a statement suggests that no requirement to give notice could ever be imposed if the affected person had to be heard first. He contended that since those persons are not known, they could not be included in the proceedings and in any event they would be seized with constructive notice as noted in **Snell's Equity**[32].

 [51]    Learned counsel submitted that this limb of the relief should have been considered separately because it did not seek to prevent the sale and the balance of convenience of that measure was substantially different from the main injunctive relief being sought. He argued that had the learned judge approached this aspect of the case in this fashion, he would have concluded that it was plainly appropriate for potential purchasers to be placed on notice of Mrs. Gurieva-Motlokhov's and the owners' arguable interests in the vessel.

[52]     He submitted further that section 38A was specifically enacted to create a power to expropriate the *Alfa Nero*; and that the Port Manager's sale of the *Alfa Nero* was effected in breach of sections 3 and 9 of the **Constitution** and was therefore

---

[32] 34th Ed. at para. 4-029 at which Jones v Smith (1841) 1 Hare 43, 66 ER 943 is cited.

unlawful. He contended that having regard to the unique characteristics of the vessel and the sentimental value of the works of art that adorned it, the Port Manager's conduct in this regard, was likely to cause harm to Mrs. Gurieva-Motlokhov, and constituted loss for which she could not be compensated in damages.

[53]    Referring to the treatise 'The Rule of Law'[33] by Lord Bingham, learned counsel invited the Court to consider the Law Lord's treatment of the word 'discretionary'. Lord Bingham opined that while the term is used to describe the exercise of certain judicial powers, rules have emerged to direct such exercise. He reasoned for example that:

> '…If the defendant's conduct is shown to be unlawful, and to be likely to cause harm to the claimant for which he will not be adequately compensated by damages, and if the defendant appears likely to go on doing whatever it is that the claimant complains of and gives no undertaking to desist, the judge is virtually bound to grant an injunction restraining the defendant from acting in that way. He has a discretion, but it is a discretion in name only because it can only be exercised one way.'[34]

[54]    Relying on this pronouncement, learned counsel contended that it is more appropriate to refer to the exercise as more like an evaluative judgment than an exercise of a discretion *simpliciter*. He submitted that although his client made repeated requests of the Port Manager and the other respondents they refused to give an undertaking not to sell the vessel. He stated that in view of Lord Bingham's observations, the learned judge was under a duty in the circumstances to grant the injunction in the exercise of his discretion under section 24 of the **Supreme Court Act** because it was the just and convenient thing to do. He argued that by failing to grant the injunction, the learned judge erred in conducting the requisite evaluative judgment.

---

[33] Penguin Books, 2011.

[34] Under the rubric 'Law not Discretion'; reproduced at pg. 740-741 of the Authorities Bundle.

**Respondents' Submissions**

[55]    The respondents submitted that the learned judge properly considered all relevant factors in the exercise of his discretion. They submitted further that the vessel was, and is in a dangerous condition and continues to pose environmental and other threats to the harbour, its environs and the persons who live, work there and use the facilities. They submitted that the learned judge was entitled to rely on the Port Manager's evidence that the vessel was not insured, notwithstanding Mrs. Gurieva-Motlokhov's reference to a newspaper publication to the contrary. Accordingly, the learned judge was correct to find that it posed an ongoing risk, the evidence supports these conclusions and was not challenged by Mrs. Gurieva-Motlokhov.

[56]    In response to Mrs. Gurieva-Motlokhov's contention that the learned judge did not explain why the sale was necessary to protect the environment, the respondents argued that as a matter of public interest, the best way to protect the harbour is to remove the vessel. They argued that Mrs. Gurieva-Motlokhov has taken no action save writing one letter to the Port Manager and despite her statements of interest and good intentions has done nothing to bring the boat into a state of repair. They noted that the vessel's condition has not improved and it is still docked in the harbour pending resolution of the several court proceedings.

[57]    On the issue of delay, learned senior counsel Mr. Anthony Astaphan contended that it is not about whether the appellant had transmitted a correspondence sometime before taking legal action but rather whether she filed her claim promptly. There is nothing on the record that shows that she was somehow prevented from filing a claim between March 2023 and June or before the High Court's dismissal of the FDOL's application for injunctive relief. He pointed out that in any event, the doctrine of laches arises in private law and is not applicable to the public law sphere, especially in circumstances where the *Alfa Nero* is in a dangerous condition that poses a threat to the harbour. He submitted that in this regard, **Fisher v Brooker** addresses issues regarding intellectual property rights and is not applicable in public law or to the dispute in the instant case.

[58]    He contended that there can be no serious question that the grant of an injunction would have been detrimental to all the public interest considerations and good administration of the harbour and environment in light of the grave threat it posed to the environment and persons using, living and working at the Harbour.

[59]    As to the appellant's 'sentimental value' arguments, learned senior counsel contended that Mrs. Gurieva-Motlokhov's evidence is that the vessel is used for commercial charters, therefore, she is not entitled to claim such an interest in it. He reasoned that in any case, damages can be an adequate remedy in respect of an item that has sentimental value. He added that in Claim No. ANUHCV2023/0185, not only did the learned judge acknowledge that sentimental value may be ascribed to the vessel, he noted that a monetary value would be utilized for insurance purposes and in this regard, he relied on Mr. Shane Giles' evidence that the value was estimated to be USD100 million. As a result, he did not err when he held that damages would be an adequate remedy.

[60]    On the issue of presumption of constitutionality, learned senior counsel submitted that the **Act** was passed by both houses and approved. Consequently, there is a presumption of constitutionality and the learned judge was entitled to so find. He reasoned that the appellant's contentions to the contrary are insufficient to rebut that presumption for purposes of the hearing of the application for interim injunctive relief.

[61]    Learned senior counsel added that the respondents rely on the law of abandonment and section 9(4) of the **Constitution**, issues that the learned judge ruled can be determined only at the trial. Accordingly, the learned judge was quite correct to examine all of the circumstances and not merely the sale of the vessel. He reasoned that the learned judge was therefore right to refuse the orders requested.

**Issue 1 - Exercise of discretion – Interim Injunctive relief**

[62]    The central issue in this appeal concerns the exercise of discretion by the learned judge whereby he refused to grant the interim injunction and declarations being sought by Mrs. Gurieva-Motlokhov. It is settled law that an appellate court's review of the exercise of such discretion is circumscribed by certain legal principles that have been enunciated many times by this court. In this regard, **Dufour and Others v Helenair Corporation Ltd and Others**[35] is recognized as the leading authority.

[63]    In that case, Chief Justice Sir Vincent Floissac summarized the applicable guiding principles governing an appellate court's review of the exercise of judicial discretion by a judge. He explained:

> 'Such an appeal will not be allowed unless the appellate court is satisfied (1) that in exercising his or her judicial discretion, the judge erred in principle either by failing to take into account or give too little or too much weight to relevant factors and considerations, or by taking into account or being influenced by irrelevant factors and consideration; and (2) that, as a result of the error or degree of the error, in principle the trial judge's decision exceeded the generous ambit with which reasonable disagreement is possible and may therefore be said to be clearly or blatantly wrong.'

This is the acid test that is applicable to a proper review of the learned judge's decision arising from his exercise of discretion and which arises for consideration in relation to grounds 1 – 3 and 5 of the appeal.

[64]    In a similar vein, the Board in **Nilon Ltd. v. Royal Westminster Investment SA** described as trite law, the principle that:

> '... in appeals from the exercise of a discretion an appellate court should not interfere with a decision of a lower court which has applied the correct principles and which has taken into account matters which should be taken into account and left out of account matters which are irrelevant, unless the appellate court is satisfied that the decision is so plainly wrong that it must be regarded as outside the generous ambit of the discretion which has been entrusted to the court.'[36]

---

[35] (1996) 52 WIR 188 at pg. 190-191.
[36] [2015] UKPC 1; at para. 16.

[65]     Equally relevant is the well-established threshold test for the grant of an interim injunction that was laid down almost 50 years ago in the locus classicus **American Cyanamid Co v Ethicon**. It is settled law that in order to be successful, an applicant for an interim injunction must satisfy the judge of three things. Firstly, he must present a good arguable case by demonstrating that there is a serious issue to be tried between the parties. Secondly, the court will consider whether the balance of convenience favours granting or refusing the injunctive relief pending the trial of the action. Thirdly, the court must be persuaded that an award of damages to the respondent will not be an adequate remedy if injunctive relief is granted and the respondent prevails at the substantive hearing.

[66]     The wide discretion enjoyed by the Court generally, applies in public law cases and was affirmed by this Court in **Beryl Isaac and others v Grenadian Hotel Limited**[37] where Justice of Appeal Thom opined that where the case involves issues of public law the approach to be adopted is the one articulated by the House of Lords in **R v Secretary of State for Transport ex p. Factortame Ltd. (No. 2)**[38] and **Belize Alliance**. The learned Justice of Appeal stated that the guidelines set out in **American Cyanamid** are to be applied with necessary modifications appropriate to the public law element.

[67]     She added:

>    '(b)  The public law element is a special factor in considering the balance of justice and the court has a wide discretion to take the course which seems most likely to  minimize the risk of an unjust result.
>    (c)   …
>    (d)  It is an exceptional course for the court to restrain a public authority from enforcing an apparently valid law. A court would only take such course where having regard to all the circumstances of the case the court is satisfied that the challenge to the validity of the law is prima facie based and adoption of such an exceptional course is justified.
>    (e)  A public authority acting within the law should be permitted to exercise its functions and duties for the benefit of the public.'[39]

---

[37] GDAHCVAP2017/0002 (delivered 15th December 2017, unreported)
[38] [1991] 1 AC 603.
[39] GDAHCVAP2017/0002; at para. 12(b), (d) and (e).

I remain mindful of these legal principles as I review the learned judge's decision.

[68]    The appellant has submitted before this court that the **American Cyanamid** principles have recently been further refined by the Privy Council in **Convoy Collateral Ltd v Broad Idea International Ltd**[40] at paragraphs 52 and 57 (and applied in **In Re G**[41]) and by the English Court of Appeal in **Bacci v Green**[42]. Learned counsel argued that the statutory test under section 24(1) of the **Supreme Court Act** for the grant of an injunction as articulated in **Convoy Collateral** is 'now to be understood as requiring that there was (i) an interest of the claimant which merited protection and (ii) a legal or equitable principle which justified exercising the power to order the defendant to do or not do something'. Learned senior counsel Mr. Astaphan countered that despite the appellant's submission that some revolutionary development in the law emerges from the referenced cases, the injunctive relief was nonetheless refused at the appellate level in those cases.

[69]    Before proceeding further, it is necessary to consider whether **Convoy Collateral** and **Bacci v Green** introduced some refinement of the **American Cyanamid** principles. One of the legislative provisions under consideration in **Bacci v Green** and **In Re** was section 37(1) of the **UK Senior Courts Act 1981** which is the English statutory equivalent of section 24(1) of the Antigua and Barbuda **Supreme Court Act**. The identical provision of the Virgin Islands **Supreme Court Act** was being considered by the Board in **Convoy Collateral**.

[70]    A proper reading of **Convoy Collateral** and **Bacci v Green** reveals that the referenced pronouncements neither purport to nor effect a further development of the law relating to the grant of interim interlocutory relief. This is self-evident from an examination of the statements highlighted by learned counsel Dr. Dorsett.

[71]    At paragraph 52 of **Convoy Collateral** Lord Legatt opined:

---

[40] [2021] UKPC 24; [2023] AC 389.
[41] [2022] EWCA Civ 1312; [2023] Fam 107.
[42] [2022] EWCA Civ 1393.

27

'52.  The proposition asserted by Lord Diplock in the *Siskina* and *Bremer Vulkan* on the authority of North London Railway was that an injunction may only be granted to protect a legal or equitable right. There can be no objection to this proposition in so far as <u>it signifies the need to identify an interest of the claimant which merits protection and a legal or equitable principle which justifies exercising the power to grant an injunction to protect that interest by ordering the defendant to do or refrain from doing something</u>. In *Beddow v Beddow* <u>(1878) 9 Ch D 89, 93</u>, Sir George Jessel MR expressed this well when he said that, in determining whether it could be right or just to grant an injunction in any case. "what is right or just must be decided, not by the caprice of the judge, but according to sufficient legal reasons or on settled legal principles." As described above, however, within a very short time after the *Siskina* was decided, it had already become clear that the proposition cannot be maintained if it is taken to mean that an injunction may only be granted to protect a right which can be identified independently of the reasons which justify the grant of an injunction.' (Underlining added)

[72]    He continued at paragraph 57:

'As an exposition of the court's equitable power to grant injunctions, it would be difficult to improve on the following passage in *Spry, Equitable Remedies*, 9th ed (2014), at p 333:

"The powers of court with equitable jurisdiction to grant injunctions are, subject to any relevant statutory restrictions, unlimited. Injunctions are granted only when to do so accords with equitable principles, but this restriction involves, not a defect of powers, but an adoption of doctrines and practices that change in their application from time to time. Unfortunately there have sometimes been made observations by judges that tend to confuse questions of jurisdiction or of powers with questions of discretion or practice. The preferable analysis involves a recognition of the great width of equitable powers, an historical appraisal of the categories of injunctions hat have been established and an acceptance that pursuant to general applicable principles injunctions may issue in new categories when this course appears appropriate."

[73]    The first point of note in relation to those statements is that they refer approvingly to the principles enunciated in **Siskina (Owners of cargo lately laden on board) v Distos Cia Naviera SA ("The Siskina")**[43] and **Spry**, in relation to the grant respectively of freezing injunctions and permanent injunctions. Secondly, to the

---

[43] [1979] AC  210.

extent that **the Siskina** may be relevant for present purposes, it was decided in 1979 by the House of Lords[44] and therefore the legal principles enunciated in it can in no way be considered to be a recent development of the law. Moreover, in **the Siskina**, Lord Diplock traced the articulation of the referenced principle to a century before in the case of **North London Railway Co v Great Northern Railway Co** (1883) 11 QBD 30, 39-40.

[74]    He remarked:

> 'Since the transfer to the Supreme Court of Judicature of all the jurisdiction previously exercised by the court of chancery and the courts of common law, the power of the High Court to grant interlocutory injunctions has been regulated by statute. <u>That the High Court has no power to grant an interlocutory injunction except in protection or assertion of some legal or equitable right which it has jurisdiction to enforce by final judgment, was first laid down in the classic judgment of Cotton LJ in North London Railway Co v Great Northern Railway Co … which has been consistently followed ever since.</u>'[45] (Underlining added)

[75]    In **Convoy Collateral**, Lord Legatt also referred to other earlier authorities including **Mareva Cia Naviera SA v International Bulkcarriers SA ('The Mareva')**[46] that underscored the identical principle, namely that:

> 'whenever a right, which can be asserted either in law or in equity, does exist, then, whatever the previous practice may have been, the court is enabled by virtue of [section 45 of the 1925 Act], in a proper case, to grant an injunction to protect that right.'[47]

[76]    Further, at paragraph 10 of **Convoy Collateral** Lord Legatt summarized the position as follows:

> 'In summary, what the House of Lords decided in *The Siskina* was that the term "injunction" in sub-rule (i) referred only to an injunction sought "in the action" as final, substantive relief for the invasion by the defendant of a legal or equitable right of the plaintiff (whether or not damages were also claimed). The term did not include a freezing injunction or other interlocutory

---

[44] Siskina
[45] At p 256 of the Siskina; and quoted at para. 9 of Convoy Collateral.
[46] [1975] 2 Lloyd's Rep 509, 510.
[47] See paragraph 20 of Convoy Collateral where Lord Legatt repeated this passage from Halsbury's Laws of England 3rd ed, vol. 21 (1957), para 729, which was referred to by Lord Denning MR in the Mareva and cited by Neill LJ in Derby & Co Ltd v Weldon (Nos 3 and 4) [1990] Ch 65.

injunction. Although not necessary to the decision, however, … there are statements in his speech to the effect that the High Court has no power to grant an interlocutory injunction unless it is ancillary to a cause of action, in the sense of a claim for final, substantive relief which the court has jurisdiction to grant.'[48]

He concluded that there is no limitation on the court's power to grant a freezing injunction where it appears to the court to be just and convenient except perhaps, by dint of established practice.

[77]     Similar pronouncements were made in **Bacci v Green**. For example, Newey LJ accepted[49] that the powers conferred by section 37(1) of the 1981 Act are subject to constraints as confirmed in judicial precedents including **Convoy Collateral**. He then quoted approvingly Lord Legatt's statements at paragraph 57 (already reproduced above) and highlighted the referenced two requirements for the grant of an injunction as articulated in **Convoy Collateral** and **In re G**[50] (namely, (i) an interest of the claimant which merits protection and (ii) a legal or equitable principle which justifies exercising the power to order the defendant to do or not do something.')

[78]     This review of **Convoy Collateral** and **Bacci v Green** illustrates that they do not in fact introduce the developments suggested by the appellant; but instead affirm those principles as being long established and settled. In passing, it is worth noting that the recent developments heralded by **Convoy Collateral** are fourfold, relate specifically to the law and practice in relation to the grant of freezing injunctions and significantly, are not relevant for present purposes. For completeness, it is prudent to list them.

---

[48] Sub-rule (i) refers to RSC Order 11, rule 1(1)(i) which allowed for service of a writ out of the jurisdiction with leave of the court 'if in the action begun by the writ an injunction is sought ordering the defendant to do or refrain from doing anything within the jurisdiction (whether or not damages are also claimed in respect of a failure to do or the doing of the thing);'
[49] At paragraph 16.
[50] [2023] Fam 107 (Re G), at paras 55, 61, 69 and 71.

[79]    The first development highlighted in **Convoy Collateral** is that a freezing injunction may be 'granted or continued to aid enforcement of a judgment which has already been made against the defendant'[51]. The second involves cases where such injunctive relief may now be obtained against a person against whom the applicant has no right to claim substantive relief' or a 'non-cause of action defendant'[52] under the 'Chabra' jurisdiction[53]. The third development was legislative[54] and was introduced through the enactment of section 25(1) of the **Civil Jurisdiction and Judgments Act 1982**. It was a measure championed by the UK Parliament to ensure compliance with article 24 of the Brussels Convention on jurisdiction and enforcement of judgments in civil and commercial matters. The fourth and most recent evolution in the law that is mentioned in **Convoy Collateral** involves the practice of granting worldwide freezing injunctions.[55]

[80]    This review of the principles set down in Convoy Collateral **Ltd v Broad Idea International Ltd** and **Bacci v Green** illustrates that they do not introduce revolutionary developments on the test for interim injunctive relief. Rather, they affirm as being long established and settled the principles that the statutory test under section 24(1) of the **Supreme Court Act** for the grant of an injunction requires that there be '(i) an interest of the claimant which merited protection and (ii) a legal or equitable principle which justified exercising the power to order the defendant to do or not do something'. The new developments highlighted in those cases, (such as the practice of granting worldwide freezing injunctions) while exemplifying the principle that injunctive relief will be deployed in an appropriate case to protect the claimant's interest if it is justifiable by some legal or equitable principle, add nothing to the long-standing underlying application of the law and practice. Essentially, the court's power to grant injunctive relief had always been

---

[51] See paragraph 14 of Convoy Collateral.
[52] See paragraph 15 of Convoy Collateral.
[53] Named after the case TSB Private Bank International SA v Chabra [1992] 1 WLR 231, where a freezing injunction was granted against a company that held assets that arguably were beneficially owned by the defendant, Mr. Chabra.
[54] See paragraphs 17 and 18 of Convoy Collateral.
[55] See paragraph 19 e seq of Convoy Collateral.

linked to whether the claimant has an interest that needs protection and whether a legal or equitable principle justified granting it in the particular case. This constitutes no recent development as suggested by the appellant.

[81]    The bottom line is that section 24(1) of the **Supreme Court Act** embodies the statutory basis for the grant of an interlocutory injunction. It is trite law that the judge would make such an order only if satisfied that it is just and convenient to do so. Keeping those principles firmly in mind, I turn to consider the appellant's criticisms of the learned judge's exercise of his discretion regarding the application for injunctive relief in the present case.

**Serious issue to be tried**

[82]    While the appellant had no issue with the learned judge's conclusion that there was a serious issue to be tried in relation to her purported proprietary interest in the vessel and artwork and the constitutionality of the impugned **Act**, she took issue with aspects of his analysis and his refusal to grant the relief sought. This Court has to decide whether he erred in principle and as a result made a decision that was plainly wrong.

[83]    In deciding whether there was a serious issue to be tried, the learned judge had to evaluate Mrs. Gurieva-Motlokhov's affidavit testimony and those of the respondents and their witness. It was open to him to accept either version. Clearly, he accepted the narrative advanced by the respondents as to the danger posed by the vessel and of it being uninsured and in disrepair. He preferred their and not Mrs. Gurieva-Motlokhov's competing assertions that it was insured[56]. He also accepted that the vessel was not being maintained and posed a threat of irreparable ecological damage to the harbour. I do not consider those findings to be irrational or outside the scope of the range of reasonable conclusions that could be drawn from the opposing factual contentions.

---

[56] By reference to the Cabinet Notes of 13th April 2023.

[84]    The learned judge further identified the four main legal contentions made by Mrs. Gurieva-Motlokhov in her claim and application including that the **Act** expropriates her property without compensation contrary to section 9 of the **Constitution**. He zeroed in on this issue and concluded that on the one hand, Mrs. Gurieva-Motlokhov had advanced on her pleadings an arguable case, that in breach of section 9 of the **Constitution**, section 38A of the **Act** could be construed as compulsorily taking away without compensation, any proprietary interest that she may have in the vessel or works of art. On the other hand, the respondents could potentially establish at trial that even if she had such interest in the property, it was not compulsorily acquired in violation of section 9 of the **Constitution** because such acquisition fell within one of the exceptions in section 9(4) of the **Constitution**.

[85]    Section 9(4) provides:

'(4) Nothing contained in or done under the authority of any law shall be held to be inconsistent with or in contravention of subsection (1) of this section-

(a) to the extent that the law in question makes provision for the taking of possession or acquisition of any property, interest or right-
(i) in satisfaction of any tax, rate or due;
(ii) by way of penalty for breach of the law or forfeiture in consequence of breach of the law;
(iii) …
(iv) …;
(v) in circumstances where it is reasonably necessary so to do because the property is in a dangerous state or likely to be injurious to the health of human beings, animals or plants;

and except so far as the provision or, as the case may be, the thing done under the authority thereof is shown not to be reasonably justifiable in a democratic society;'

[86]    A further qualification is set out in sub-section (5) which provides:

'(5) Nothing contained in or done under the authority of any law enacted by Parliament shall be held to be inconsistent with or in contravention of this section to the extent that the law in question makes provision for the compulsory taking of possession of any property, or the compulsory acquisition of any interest in or right to or over property, where that property, interest or right is held by a body corporate established by law for public purposes in

33

which no monies have been invested other than monies provided by Parliament or any legislature established for the former colony or Associated State of Antigua.'

[87]    The learned judge signaled that he had taken those constitutional provisions into account by holding that the viability of a defence pursuant to section 9(4) of the **Constitution** could be properly entertained only at trial. He ruled that it would be premature for him to make a ruling as to whether Mrs. Gurieva-Motlokhov held any proprietary interest in the vessel or artwork as alleged because he had no expert evidence on Guernsey trust law in that regard. Likewise, relying on **Jean Rony-Jean Charles v Carl Bethel**[57] he quite properly noted that it was not possible to make any definitive rulings on the legal issues raised in Mrs. Gurieva-Motlokhov's claim particularly since the respondents had not had an opportunity to respond to it. In my estimation, on those matters he was right for the reasons given.

[88]    Mrs. Gurieva-Motlokhov had advanced a good arguable case that section 38A of the **Act** in breach of section 9 of the **Constitution**, could be construed as compulsorily taking away without compensation any proprietary interest that she may have in the vessel or artwork onboard. I am satisfied that the learned judge overlooked no relevant matters in arriving at this determination and took no irrelevant factors into account. In view of his evaluative assessment, I am satisfied that on the material before him he had adequate factual and legal bases to conclude the constitutionality of section 38A as well as the asserted proprietary interest constituted a serious issue to be tried. It is evident that he applied the relevant legal principles in determining that this was a serious issue to be tried. In my opinion, there is no factual or legal basis on which to find that he erred or was plainly wrong and I would not interfere with his ruling on this score.

---

[57] [2022] UKPC 50.

**Balance of convenience**

[89]    On the issue of the balance of convenience, Mrs. Gurieva-Motlokhov contended that the learned judge erred in his evaluation by balancing doing nothing as opposed to permitting the sale of the vessel. She further faulted him for not explaining why it was necessary to sell the vessel to avoid the risk of environmental damage.

[90]    On this aspect of the case, the learned judge took account of the respondents' assertions of the continued potentially irreparable environmental damage to the Falmouth Harbour, the lack of insurance over the vessel, the lack of maintenance and the risk it posed to navigation if left in its present state. Against this, he considered the confidential information that the appellant provided as to her access to substantial assets, her proposal to provide an undertaking in damages, reservations about the adequacy of damages in this case, as well as her failure to take steps to secure the vessel's release between March 2022 and April 2023. He also took note of the letter from her lawyer to the authorities but found that in all the circumstances, the balance of convenience favoured the respondents.

[91]    While he did not state expressly that he weighed the appellant's request for injunctive relief against permitting the sale under section 38A of the **Act**, it is pellucid from paragraphs [27] through [33] of the judgment that this was the nature of the exercise on which he had embarked. I agree with learned senior counsel Mr. Astaphan that on the evidence, it is reasonable to conclude that removal of the vessel was the best way to protect the environment as a matter of public interest. It strikes me that it is logical to conclude that removing an object that creates a hazard is perhaps the most obvious way to staunch or correct further deterioration or potential catastrophic consequences.

[92]    It is arguable that it would have been ideal for the learned judge to spell out this obvious reality and to highlight that removal of the vessel in the absence of a sale to a third party would necessarily incur ongoing expenses for the vessel's maintenance and other outgoings. However, I consider that this was self-evident in

light of his findings. I am satisfied therefore that the learned judge's failure to include this explanation is not fatal to his determination.

[93]    The appellant's contention that the learned judge weighed the wrong alternatives seems to ignore that he was required to consider whether to maintain the status quo or grant the injunction. Moreover, contrary to the appellant's submissions, it was unnecessary for him to explain how the sale of the vessel was necessary to avoid the risk of environmental damage. What was important was that he weighed whether the balance of convenience favoured granting the injunction to forbid the sale or maintaining the status quo by permitting the sale to proceed. He did so. This criticism does not advance the appellant's case.

[94]    Furthermore, an elementary principle of law is that a judge is not required to make a ruling on every factual contention or factual assertion or legal submission advanced in a case. He need only address those issues that are critical to the resolution of the dispute and give adequate reasons to inform the parties and appellate court of the legal principles that he considered and applied in arriving at his determination. He does not have to provide extensive reasons or deal with every argument raised by counsel.

[95]    In view of the affidavit testimony and the learned judge's express reasons for his conclusion on the balance of convenience issue, it is clear that he considered that removal of the vessel was necessary to forestall further environmental damage to the Falmouth Harbour. This can be deduced from the details outlined in paragraphs [5] through [12] of the judgment including the Port Manager's notification that the vessel 'posed an imminent threat to the harbour and other vessels and was a risk to the economy of Antigua and Barbuda.' I am satisfied that in assessing the balance of convenience the learned judge had regard to the relevant surrounding circumstances and applicable legal principles, did not err in principle and did not factor in irrelevant considerations. I am of the considered opinion therefore that he did not make a blatantly wrong decision and I would not disturb his determination.

**Adequacy of Damages**

[96]   Citing **Attorney General v McKenzie Frank**[58] the learned judge ruled on the issue of adequacy of damages that:

> '… unless the Claimant can prove an interest or right to property as recognized by law the issue of sentimental value is of no assistance to her.'[59]

Mrs. Gurieva-Motlokhov's contention that the **McKenzie Frank** case does not address the issue of sentimental value in property is correct.

[97]   A proper reading of the impugned pronouncement demonstrates that it merely repeats the principle that a claimant seeking an interim injunction must show that she has an interest in the subject matter that is worthy of protection, as outlined in a long line of cases including the **Mareva**, the **Siskina** and **Convoy Collateral** mentioned earlier and relied on by the appellant. I understand the learned judge's reference to this principle to be intended to highlight that the appellant had not established any proprietary interest in the vessel or artwork by virtue of sentimental attachment or otherwise and in that regard he did not misstate or misapply the legal principle. Furthermore, he did not rule out the possibility of that being achieved at trial and he left the door open for Mrs. Gurieva-Motlokhov to take that route.

[98]   The appellant's contention that the learned judge seems to have overturned a determination made in his earlier decision in ANUHCV2023/0185 that the vessel 'may have sentimental value to those that regularly enjoy it' is interesting and need not detain the court. It suffices to point out that the referenced statement formed no part of the ratio decidendi in the earlier decision and instead was made obiter. Furthermore, even if the learned judge had made two irreconcilable determinations in the two cases, a ruling in that earlier case is not determinative of any issue in the

---

[58] [2020] ECSCJ No. 215.

[59] At para. 34 of the judgment.

instant case so as to invalidate the learned judge's decision in the latter. It is therefore of no moment in this appeal.

[99]    As to the learned judge's finding regarding whether the appellant could be compensated in damages for loss of any proprietary interest in the vessel and/or works of art, in my opinion, he quite properly took account of the fact that no matter how unique or valuable, the vessel attracted a monetary value for insurance purposes and this would suffice in the event that compensation had to be quantified. I am satisfied that he did not err in law; nor had regard to irrelevant considerations; that he took into account all relevant factors and was not plainly wrong in that assessment. I would therefore not interfere with his ruling or the exercise of his discretion on the issue of adequacy of damages.

**Delay**

[100]    It is so well-established as to be considered trite law that an applicant who seeks interim injunctive relief must approach the court with dispatch. This is because injunctive relief is dispensed within the court's equitable jurisdiction which is administered in accordance with a set of legal principles or maxims. One such maxim is 'Equity aids the vigilant, and not those who slumber on their rights.' This maxim imposes a duty on an applicant to approach the court without delay when applying for interim relief ahead of a trial. I hasten to add that delay will not defeat an application for relief in every case. Each case must be determined on its own facts. Among the matters the court is required to consider is the length of the delay and the reasons for the delay. Evidently, the learned judge applied that maxim in this case.

[101]    In light of the prevailing circumstances including Mrs. Gurieva-Motlokhov's 12-month delay in applying for an injunction, the learned judge was entitled to take the position that he did in relation to her inaction between March 2022 and April 2023. It was a reasonable approach in the circumstances in view of the applicable legal principles even taking into account her letter to the Port Manager. I am satisfied that

the learned judge was entitled to apply the stated maxim in the exercise of his discretion and that he did not err in doing so. I would not disturb his finding.

**Good administration and prejudice**

[102]    When considering whether to grant relief because of delay, a judge is required to take into account whether doing so would be detrimental to good administration or cause substantial hardship to or substantially prejudice the rights of any person.[60] This matter was not expressly addressed by the learned judge. I remind myself that even though the learned judge made no such pronouncement, this does not mean that it was not in his contemplation when he made the ruling on delay. He was not required to address every ancillary issue if the substance of the judgment was adequate to dispose of the main issues in dispute. I am satisfied that it was.  I, therefore, make no finding the CPR 56.2 aspects regarding delay were ignored by the learned judge.

[103]    To sum up, bearing the abovementioned principles in mind, Mrs. Gurieva-Motlokhov had advanced a good arguable case that section 38A of the **Act** in breach of section 9 of the **Constitution**, could be construed as compulsorily taking away without compensation any proprietary interest that she may have in the vessel or artwork onboard. I am satisfied that the learned judge overlooked no relevant matters in arriving at this determination and took no irrelevant factors into account. In view of his evaluative assessment, I am of the considered opinion that on the material before him he had adequate factual and legal bases to conclude that the issue regarding the constitutionality of section 38A as well as the asserted proprietary interest constituted a serious issue to be tried. Given the affidavit testimony and the learned judge's express reasons for his conclusion on the balance of convenience issue, it is clear that he had considered that the removal of the vessel was necessary to forestall further environmental damage to the harbour. As to whether the appellant could be compensated in damages for any loss of interest in the vessel and artwork, the judge considered that regardless of how unique or valuable, the vessel attracted

---

[60] CPR 56.5(2).

a monetary value for insurance purposes, and this would suffice if compensation had to be quantified. Further, in relation to the appellant's inaction between March 2022 and April 2023, the learned judge evidently considered that equity imposes a duty on an applicant to approach the court without delay when applying for interim relief ahead of a trial. He was entitled to take all of those factors into account in arriving at his decision. The judge had regard to the relevant surrounding circumstances and applicable legal principles and did not factor in irrelevant considerations. Therefore, there is no factual or legal basis to find on the application for injunctive relief that the learned judge erred in principle and had regard to irrelevant matters and as a result made a determination that was plainly wrong that would justify this court's interference with his decision.

[104]    In light of the foregoing, I would accordingly dismiss Grounds 1, 2 and 3 of the appeal. In the circumstances, Ground 5 would fall away and be dismissed.

**Presumption of Constitutionality**

[105]    The issue of constitutional presumption of constitutionality of legislation arose when the learned judge was considering the appellant's prayer for interim declaratory relief in relation to the registration of the vessel under the **Merchant Shipping Act**.[61] It was no part of his reasoning in relation to his refusal to grant interim injunctive relief. The appellant appeared not to have any issue with the learned judge's reliance on and application of the presumption of constitutionality in refusing to grant an interim declaration that the vessel does not qualify for registration under the **Merchant Shipping Act**. She made no submissions to such effect. Therefore, the appellant's argument that the learned judge applied a higher and different standard with respect to the injunctive relief as to the presumption of constitutionality than outlined in **Belize Alliance** is not borne out in the decision. There is therefore no merit to that argument. For this reason, I would dismiss ground of appeal 4.

---

[61] See paragraphs 35 and 36 of the judgment.

[106]    For completeness, I will address shortly any implicit invocation of the presumption argument in relation to interim declaratory or injunctive relief. I remain mindful that in hearings for interim relief, the judge is not required to conduct an extensive analysis of the evidence or even resolve conflicts in either the evidence or complex legal questions. The requested interim reliefs engaged evidentiary and legal contentions including whether the **Act** was unconstitutional.

[107]    The presumption of constitutionality principle was explained in **AG v Antigua Times** by Lord Fraser of Tullybelton as follows:

> 'In some cases it may be possible for a Court to decide from a mere perusal of an Act whether it was or was not reasonably required. In other cases the Act will not provide the answer to that question. In such cases has evidence to be brought before the Court of the reasons for the Act and to show that it was reasonably required? Their Lordships think that the proper approach to the question is to presume, until the contrary appears or is shown, that all Acts passed by the Parliament of Antigua were reasonably required.'[62]

[108]    In the instant case, the learned judge took refuge in that presumption. Arguably, (and the learned judge clearly took the position) a mere perusal of the impugned provisions in section 38A of the **Act** would be inadequate to determine whether the Port Manager's or Director's impugned conduct was legally invalidated for unconstitutionality.  Indeed, the issue of the appellant's avowed proprietary interest in the vessel and artwork had not yet been decided and the respondents had not deployed their response to the claim. Therefore, it would not have been apparent which if any, of the exceptions or other provisions under section 9 of the **Constitution** they might seek to invoke in defence to the charge of unconstitutionality relative to their conduct. Accordingly, the learned judge was entitled to apply the presumption of constitutionality to section 38A of the Act.  He did not thereby err in law. Nor did he err in principle and as a result made a determination that is blatantly wrong that would merit reversal by this Court.

---

[62] [1975] UKPC 15, at pg. 9.

[109]    I am satisfied that the learned judge exercised his discretion regarding the declaratory relief in accordance with the relevant legal principles and for this additional reason am fortified in that stance with respect to the refusal of injunctive relief. I would therefore dismiss the fourth ground of appeal.

**Notice to purchasers**

[110]    The appellant acknowledged that any purchaser would have constructive notice of any prior interests that the owner or the appellant may have in the vessel or artwork. In light of that recognition,and bearing in mind that the order being sought is available at the court's discretion if the court considers that it is just and convenient to make such an order, and further that the court must be satisfied of the appellant's proprietary interest, I do not find that the learned judge's refusal was unreasonable and unjustified. I am of the view that he was entitled to rule as he did in all of the circumstances as rehearsed in the judgment. I would dismiss ground 6 of the appeal.

**Counter-Appeal**

[111]    The main issue raised by the respondents' 'counter-appeal' is whether the learned judge erred in ruling that there was a serious issue to be tried as to whether the appellant had any proprietary interest in or right to the vessel. Related thereto is their contention that he therefore erred by failing to rule that she was not entitled to bring the constitutional claim and by not dismissing her claim.

[112]    Having already addressed the serious issue contentions as part of the appeal, it is unnecessary for me to consider this matter afresh or any of the arguments presented by counsel for the respective parties on the counter-appeal. I therefore refrain from doing so. I would therefore wholly affirm the learned judge's order.

**Costs**

[113]    The general rule under CPR 56.13(6) is that no order is made as to costs in favour of the State in judicial review matters unless satisfied that the applicant has acted

unreasonably in bringing the proceedings. In my opinion, there is no basis to deviate from the general rule in the case at the appeal bar. I would make no order as to costs.

**Disposition**

[114]    I would make the following orders:

    (1)    The appeal is dismissed and the order of the learned judge is affirmed in its entirety.

    (2)    The counter- appeal is dismissed.

    (3)    No order is made as to costs.

[115]    I wish to express appreciation for the assistance afforded to the court by all counsel.

I concur.
**Vicki Ellis**
Justice of Appeal

I concur.
**Gerard St. C Farara**
Justice of Appeal [Ag.]

**By the Court**

**Chief Registrar**