UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>APPLICATION UNDER 28 U.S.C. SECTION 1782 TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Case No.  1:25-mc-00098 |

**DECLARATION OF MATTHEW GETZ IN SUPPORT OF APPLICATION UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY IN THIS DISTRICT FOR USE IN FOREIGN PROCEEDINGS**

I, Matthew Getz, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the foregoing is true and correct:

***Introduction:***

1.     I am a solicitor of the Senior Courts of England and Wales and was admitted to practice in 2009. I was previously admitted to the New York State Bar in 2005. I am a partner at the law firm, Pallas Partners LLP, in London, United Kingdom.

2.     I make this declaration in support of the application of Yulia Guryeva-Motlokhov (the "Applicant") under 28 U.S.C. § 1782 (the "Application") to take discovery pursuant to 28 U.S.C. § 1782 (the "Requested Discovery").

3.     Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and experience, or upon my discussions with or review of the work product

of other counsel working on behalf of Applicant. Insofar as they are within my own knowledge, the facts and matters set forth herein are, to the best of my own knowledge and belief, true.

4.  In making this Declaration I do not waive any applicable legal privileges.

**The Antiguan Proceedings**

5.  In 2023, the Applicant initiated legal proceedings in the High Court of the Eastern Caribbean Supreme Court (Antigua and Barbuda) (the "High Court") against certain officers of the Government of Antigua and Barbuda (the "Antiguan Proceedings").

6.  The Antiguan Proceedings are based on the confiscation and sale of the motor yacht *Alfa Nero* (the "Vessel"), which the Applicant now believes to be the result of corruption and self-dealing by officials in the Government of Antigua and Barbuda, including Prime Minister Gaston Browne and certain members of his inner circle.

7.  I have direct knowledge of the Antiguan Proceedings, having acted as the Applicant's legal representative since November 2022, including in relation to the confiscation of the Vessel and the Antiguan Proceedings. I am and have been responsible for giving instructions on the Applicant's behalf to her legal representatives in Antigua in connection with the Antiguan Proceedings.

8.  The Applicant initiated the Antiguan Proceedings in the High Court in June 2023 to challenge the seizure and intended sale of the Vessel on the basis that these actions contravened her rights to property guaranteed by sections 3 and 9 of the Constitution of Antigua and Barbuda (the "Constitution"). The Applicant's position is that the confiscation and sale of the Vessel pursuant to s. 38A of the Port Authority Act 1972 (as enacted and amended by The Port Authority Act 2023) were unconstitutional. The Government of Antigua and Barbuda, through its officers,

has maintained that these actions were constitutional under article 9(4) of the Constitution by virtue of being reasonably necessary due to the "*dangerous state*" of the Vessel.

9. The High Court is due to hand down its judgment regarding the constitutionality of the confiscation and sale of the Vessel imminently (the "Judgment").

10. If the Judgment is unfavorable, the Applicant intends to appeal the decision to the Court of Appeal of the Eastern Caribbean Supreme Court (the "Court of Appeal"), and, if again unsuccessful, thereafter to the Judicial Committee of the Privy Council in London, which serves as the highest court of appeal for matters of this type commencing in the High Court.

11. In such an appeal, the Applicant would seek to adduce the Requested Discovery as necessary, in order to have the Judgment amended, varied or set aside, or for the Court of Appeal to make the order which ought to have been made, on the grounds that the Judgment is wrong as a matter of law or fact or due to a serious procedural or other irregularity. The Court of Appeal may also, if certain conditions were met, order that a new trial be held.

12. But since the trial in the High Court has concluded, an order of the court will be needed to admit the Requested Discovery into evidence. In determining whether to admit evidence that was not before the High Court, the Court of Appeal would consider the relevant principles in both Antiguan and English law.[1]

13. The leading English authority on adducing fresh evidence after judgment is <u>Ladd v Marshall</u> [1954] 1 WLR 1489, in which the Court of Appeal of England and Wales established three conditions for new evidence to be allowed on appeal against a final decision: i) the evidence could not have been obtained with reasonable diligence for use at the trial in the lower court, ii)

---

[1] The common law of England continues to be applied and referred to in Antigua. *See* Constitution, sch. 2, paras. 2(1), 5; The Constitution of Antigua 1967, art. 107; The Common Law (Declaration of Application) Act 1705.

the evidence, if given, would have an important influence on the result of the case (though it need not be decisive), and iii) the evidence must credible (though it need not be incontrovertible).

14. *Ladd v Marshall* remains good law in England and was recently endorsed by the Court of Appeal in *Chia Hsing Wang v XY* [2023] ECSC J0606-2.[2] I am not a lawyer qualified in Antigua and Barbuda, but I consider that *Chia Hsing Wang* clearly confirms that in the present case the Court of Appeal would apply the principles in *Ladd v Marshall* to any request by the Applicant to adduce the Requested Discovery on appeal.

15. In the Applicant's case, the Requested Discovery could not have been obtained with reasonable diligence for use in the current Antiguan Proceedings before the High Court. First, the Applicant only learned of the purported sale of the Vessel when it was announced on July 19, 2024, at which point the Antiguan Proceedings were already at an advanced stage with the trial, at that stage, due to take place between September 23 and 29, 2024 (although it was subsequently postponed to the week commencing November 19, 2024).[3] Second, many of the facts stated in the Application were only recently uncovered after extensive investigation, and I am informed by the Applicant's United States lawyers that they could not have been discovered by the time of the trial in the Antiguan Proceedings. Third, the Requested Discovery is not within the control of the parties to the Antiguan Proceedings.

---

[2] Farara JA held: "*It is well-established that the Ladd v Marshall criteria are principles and not rules or special rules to be strictly applied by the court. Accordingly, a party seeking to adduce fresh evidence does not have to show some special ground for the grant of permission to rely on such evidence in the appeal. However, these criteria are to be applied with considerable care and in accordance with the overriding objective of doing justice enshrined in CPR 1.1. As Morritt L.J. opined in Banks v Cox: 'In my view the principles reflected in the rules in Ladd v Marshall ...remain relevant to any application for permission to rely on further evidence, not as rules but as matters which must necessarily be considered in an exercise of the discretion whether or not to permit an appellant to rely on evidence not before the court below.'*" (citations omitted, ellipsis in the original).

[3] The Applicant did in fact seek information in connection with the sale of the Vessel from the Government of Antigua in the Antiguan Proceedings. The government resisted providing any of the information, and disclosed certain limited information (relating to the broker's identity and amount of commission) only at the direction of the Court, on November 7, 2024.

16. In addition, for reasons set out in the following section, I consider it likely that the Requested Discovery would have had an important influence on the outcome of the Antiguan Proceedings (if the Applicant is unsuccessful).

17. I therefore consider that the Applicant would have good prospects in persuading the Court of Appeal to permit the admission of the Requested Discovery as fresh evidence if a future appeal proceeding were to be commenced.

*The Intended Use of the Requested Discovery*

18. I understand that through the Application, the Applicant seeks sale records regarding the sale of the *Alfa Nero*, as well as financial transfer information from certain financial institutions regarding Browne and certain members of his inner circle.

19. I have reviewed the Application, and in my assessment, the Requested Discovery will permit the Applicant to identify critical details about the confiscation and sale of the *Alfa Nero* and the disposition of the proceeds of the same. Specifically, I expect that financial records for the *Alfa Nero's* sale and/or charter will identify the individuals and entities who benefitted from the Vessel's seizure and sale, and may show financial transfer information for Browne and his inner circle that identify the individuals and entities that acted on Browne's behalf and for his benefit.

20. This information would be germane to the Applicant's case in the Antiguan Proceedings as follows.

    a. Article 9(1) of the Constitution provides: "*No property of any description shall be compulsorily taken possession of, and no interest in or right to or over property of any description shall be compulsorily acquired except for public use and except in accordance with the provisions of a law applicable to that taking*

*of possession or acquisition and for the payment of fair compensation within a reasonable time.*"

b. Article 9(4) states that laws passed or actions taken for certain purposes will not be inconsistent with article 9(1), including, relevantly, at article 9(4)(a)(v), "*where it is reasonably necessary so to do because the property is in a dangerous state or likely to be injurious to the health of human beings, animals or plants*".

c. But article 9(4) provides further that such exception will <u>not</u> apply if the action taken "*is shown not to be reasonably justifiable in a democratic society*".

d. The leading Privy Council case regarding whether matters are reasonably justifiable in a democratic society is <u>De Freitas v Permanent Secretary of Ministry of Agriculture, Fisheries, Lands and Housing</u> [1999] AC 69 (PC), which was relied on heavily in the Antiguan Proceedings.

e. In determining this issue, the Privy Council ruled that the question is "*whether: (i) the legislative objective is sufficiently important to justify limiting a fundamental right; (ii) the measures designed to meet the legislative objective are rationally connected to it; and (iii) the means used to impair the right or freedom are no more than is necessary to accomplish the objective*".[4]

f. The Requested Discovery would be germane to the first limb of <u>De Freitas</u>: whether the legislative objective was sufficiently important. If the Requested Discovery shows that Browne and his circle benefited and were intended to benefit from the confiscation and sale of the Vessel, that would indicate that the

---

[4] <u>De Freitas</u> at 80G.

legislative objective was to profit individual members of the Antiguan Government. Such an objective is not only not sufficiently important to justify the confiscation of valuable property without compensation, but is not even a legitimate legislative objective.

21. None of the custodians of the Requested Discovery are party to the Antiguan Proceedings. Moreover, the Applicant does not intend to add any of the custodians of the Requested Discovery to the Antiguan Proceedings.

22. As detailed above, the Court of Appeal allows for the submission of fresh evidence if the relevant criteria are met.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    5 March 2025
          London

**Matthew Getz**
Pallas Partners LLP