```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
                                                      :
                                                      :
                                                      :         25-MC-98 (JMF)
IN RE APPLICATION OF YULIA GURYEVA-                   :
MOTLOKHOV FOR AN ORDER SEEKING                        :       MEMORANDUM OPINION
DISCOVERY PURSUANT TO 28 U.S.C. § 1782                :            AND ORDER
                                                      :
                                                      :
---------------------------------------------------------------------- X
```

JESSE M. FURMAN, United States District Judge:

In this case, Applicant Yulia Guryeva-Motlokhov ("Applicant") seeks discovery, pursuant to 28 U.S.C. § 1782(a), from the Federal Reserve Bank of New York and the Clearing House Payments Company LLC (together, "Respondents") for use in several foreign judicial proceedings. *See* ECF No. 1. Specifically, the application seeks "[a]ll documents concerning all wire transfers" dating to 2019 that reference any of twelve entities and seven people — including Gaston Browne, the Prime Minister of Antigua and Barbuda — that, according to Applicant, were involved in the corrupt seizure and sale of a superyacht known as the *Alfa Nero*. *See* ECF No. 2 ("Applicant's Mem."), at 51; ECF Nos. 4-11, 4-12. By Memorandum Opinion and Order entered on March 17, 2025, this Court granted Applicant's application on an *ex parte* basis, albeit "without prejudice to the timely filing of a motion to quash one or both of the subpoenas" that the Court authorized Applicant to serve. *See* ECF No. 14. Accepting that invitation, some (but not all) of those referenced in the subpoenas — including Browne — intervened, and they now move to quash the subpoenas in their entirety. *See* ECF Nos. 21, 30. For the reasons that follow, the Court GRANTS their motions and quashes the subpoenas in their entirety.

## BACKGROUND

At the heart of this proceeding is the *Alfa Nero*, an eighty-one-meter-long superyacht once owned by Applicant's father. On August 2, 2022, the United States Office of Foreign

Assets Control ("OFAC") imposed sanctions on Applicant's father — who is purported to be a close associate of Russian President Vladimir Putin, ECF No. 22 ("Browne Mem."), at 5 — and designated the *Alfa Nero* as "blocked property," requesting that it remain in Antigua and Barbuda's territorial waters where it was moored at the time. Applicant's Mem. 6. The High Court of Justice in Antigua subsequently issued an order prohibiting the vessel's removal. *Id.*

In March 2023, media reported that the Antiguan government planned to confiscate and sell the *Alfa Nero*, citing environmental, safety, and security concerns. *See* Applicant's Mem. 7; Browne Mem. 6. Around the same time, the Parliament of Antigua and Barbuda enacted the Port Authority (Amendment) Act, which granted the government authority to declare vessels abandoned and to then seize and sell such vessels. *See* ECF No. 5 ("Hayes Decl."), ¶ 29. In June 2023, OFAC removed the *Alfa Nero* from its list of blocked properties in order to facilitate the Antiguan government's attempt to sell it. *See* Applicant's Mem. 6-7; Browne Mem. 6.

On June 15, 2023, Applicant filed a civil suit in the High Court of the Eastern Caribbean Supreme Court ("Antiguan High Court") challenging the constitutionality of the Port Authority (Amendment) Act. *See* ECF No. 6 ("Getz Decl."), ¶¶ 5-8. Applicant sought but was denied interim injunctive relief to prevent the sale of the *Alfa Nero* pending the Antiguan High Court's judgment. Applicant's Mem. 7-8. In July 2024, the Antiguan government sold the *Alfa Nero* for $40 million to YM Thunder 1 Shipping, Ltd., a company linked to a Turkish businessman named Ali Riza Yildirim. Browne Mem. 7. Trial in the Antiguan High Court took place in November 2024. *Id.* According to the parties, the Court is "due to hand down its judgment regarding the constitutionality of the confiscation and sale of the [*Alfa Nero*] imminently." *See* Getz Decl. ¶ 9.

In March 2025, Applicant initiated civil proceedings in the Commercial Court of the Kaluga Region in the Russian Federation ("Russian Court") against Yilidrim, his son, and

2

associated entities, including YM Thunder 1 Shipping Ltd., seeking recovery of damages from the purchasers of the yacht.  ECF No. 7 ("Bouiko Decl."), ¶¶ 7-19.  Shortly thereafter, Applicant filed this proceeding, seeking discovery for use in the proceedings pending in Antigua and Russia as well as proceedings that are allegedly contemplated in the United Arab Emirates ("UAE").  ECF No. 1; Applicant's Mem. 38.  By Memorandum Opinion and Order entered on March 17, 2025, this Court granted the application on an *ex parte* basis, albeit "without prejudice to the timely filing of a motion to quash one or both of the subpoenas" that the Court authorized Applicant to serve.  *See* ECF No. 14.  Now pending are two such motions to quash: one filed by Gaston Browne, the Prime Minister of Antigua and Barbuda; three members of Browne's family; four Antiguan companies; the Accountant General of Antigua and Barbuda; and the Director of the Port Authority of Antigua and Barbuda (collectively, "Antiguan Movants"), *see* ECF No. 21; and the second filed by the West Indies Oil Company ("WIOC").  ECF No. 30.

## DISCUSSION

It is well established that "Section 1782 applicants must meet certain 'statutory requirements': (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal,' and (3) the applicant must be either a foreign tribunal or an 'interested person.'"  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015)).  If those statutory requirements are met, then Section 1782 "authorizes, but does not require, a federal district court" to grant the application.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  In determining whether to exercise that discretion, a district court should consider four factors, commonly known as the "*Intel* factors": (1) whether the person from

whom discovery is sought "is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal" and its "receptivity . . . to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65; *accord Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). These factors are "neither exhaustive nor dispositive." *In re Order Seeking Discovery Under 28 U.S.C. § 1782*, No. 24-MC-152 (GHW) (GS), 2024 WL 3569022, at *3 (S.D.N.Y. July 12, 2024), *report and recommendation adopted by* 2024 WL 3567846 (S.D.N.Y. July 29, 2024); *see also Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024) (observing that "[t]he *Intel* factors are not to be applied mechanically" (internal quotation marks omitted)).

Movants here make forceful arguments with respect to the *Intel* factors, but the Court need not and does not reach them because, upon reflection, it concludes that Applicant fails to satisfy the second prerequisite for relief under Section 1782: that the requested discovery is "for use in a proceeding before a foreign tribunal." *Kiobel by Samkalden*, 895 F.3d at 243. The "for use" requirement assesses "the practical ability of an applicant to place a beneficial document — or the information it contains — before a foreign tribunal." *In re Accent Delight*, 869 F.3d at 131. An applicant must both demonstrate that the information is "minimally relevant to the foreign proceeding," *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024), and identify a "procedural mechanism by which [the applicant] may inject the discovery it seeks," *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022); *see Certain Funds*, 798 F.3d at 120 ("The key question . . . is not simply whether the information sought is relevant, but whether the [applicant] will *actually be able to use* the information in the proceeding." (emphasis omitted)). Significantly, "[i]f an applicant's ability to initiate a proceeding in which the

4

requested discovery may be used 'depends on some intervening event or decision,' the applicant must 'provide an objective basis on which to conclude that the event will occur.'" *In re BonSens.org,* 95 F.4th 75, 80-81 (2d Cir. 2024) (quoting *IJK Palm LLC*, 33 F.4th at 680).

The three proceedings that Applicant invokes — the proceedings already pending in Antigua and Russia and the proceedings allegedly contemplated in the UAE — fail to meet these standards. The Court will address each in turn.

## A. The Antiguan Proceedings

First, the pending Antiguan proceedings fall short because Applicant has failed to identify any procedural mechanism to "inject" the requested discovery into those proceedings at this time — or any time in the near future. As noted, the trial before the Antiguan High Court has already concluded, and that Court "is due to hand down its judgment . . . imminently." Getz. Decl. ¶ 9. Significantly, Applicant does not even try to argue that she would be able to place the records at issue before the Antiguan High Court itself at this stage of the proceedings. Instead, in the words of her own foreign law expert, she hopes to use the records in an *appeal* that she "*intends*" to bring "[*i*]*f* the [Antiguan High Court's] Judgment is unfavorable." *Id.* ¶ 10 (emphases added). "[A]t this stage of the proceeding," however, there is "no 'objective basis' from which" the Court can conclude that the Antiguan High Court's decision will be "unfavorable" to Applicant, let alone that the records at issue would be relevant to the particular issue or issues in an appeal from such a decision. *In re BonSens.org*, 95 F.4th at 81.

Perhaps recognizing that flaw in her request, Applicant asserts in her memoranda of law that the requested discovery would be used in the Antiguan proceeding even if the Antiguan High Court were to rule in her favor, as she would use it to enforce the judgment and seek compensation in the form of the sale proceeds. *See* Applicant's Mem. 49; ECF No. 41

("Applicant's Opp'n"), at 22. But without further explanation from her foreign law expert, this assertion alone is too "conclusory," *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018), and does "not adequately explain[] . . . how" wire transfer records dating back to 2019 would help her recover proceeds from a sale that took place in 2024, *In re Lloreda*, 323 F.Supp.3d 552, 558 (S.D.N.Y. 2018). Moreover, the assertion is hard to even credit given the Movants are not defendants in the Antiguan proceedings.

In short, Applicant has not demonstrated that the requested discovery is "for use" in the Antiguan proceedings given the current posture of those proceedings.

## B. The Russian Proceedings

Nor do the ongoing Russian proceedings satisfy the "for use" requirement. In those proceedings, Applicant seeks damages from the purchasers of the *Alfa Nero* on the ground that the purchase was "unfair" under Russian law because it was done "in accordance with sanctions imposed by 'unfriendly' states," namely the United States. Bouiko Decl. ¶ 15. But the subpoenas do not even mention the purchasers. *See* ECF Nos. 4-11, 4-12. Applicant contends that the records she seeks may help her prove that the sale of the *Alfa Nero* was part of a broad corruption scheme, may confirm "the identities of the purchasers," and may aid her in "identifying related transactions, [or] uncovering any ongoing financial connections between Browne and the alleged purchasers," Applicant's Opp'n 14-15, but she fails to show that any of that is relevant to the sole issue in the Russian proceedings: whether the vessel's purchase was "in accordance" with U.S. sanctions.[1] In short, Applicant's discovery request "appears to be

---

[1] Additionally, even if the records at issue could be used in the Russian proceedings, the Court agrees with the Antiguan Movants that "the nature of those proceedings strongly militates against permitting discovery" in the United States, as the goal of those proceedings is to undermine U.S. sanctions. ECF No. 45 ("Antiguan Movants' Reply"), at 9 (citing *Intel Corp*, 542 U.S. at 264). "No U.S. court should aid such a pursuit." *Id.*

little more than a fishing expedition to acquire documents and information that have at best limited relevance" to the Russian proceedings. *In re Lloreda*, 323 F. Supp. 3d at 559.

### C. The Contemplated Proceedings in the UAE

Finally, the Court concludes that any future criminal proceeding in the UAE is not sufficiently "within reasonable contemplation," *Intel Corp.*, 542 U.S. at 259, to satisfy the "for use" requirement. To show that a proceeding is "within reasonable contemplation," an applicant must provide "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Certain Funds*, 798 F.3d at 124. Contemplated "proceedings cannot be merely speculative"; "[a]t a minimum, [an] applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124. Significantly, courts have held that where "the most [an applicant] appears able to do is to forward the evidence [she] obtains to [a foreign criminal authority], which, exercising its discretion, will decide whether to initiate a formal criminal prosecution," the "for use" requirement is not met. *In re Klein*, No. 23-MC-211 (PAE), 2023 WL 8827847, at *9 (S.D.N.Y. Dec. 21, 2023), *aff'd sub nom. Klein v. Altara RK Invs. Ltd.*, 2025 WL 560105 (2d Cir. Feb. 20, 2025) (summary order); *see, e.g.*, *IJK Palm LLC*, 33 F.4th at 678 ("[D]iscovery material is not 'for use' in a foreign proceeding if it must first be used to persuade a third party to initiate that proceeding.").

Measured against these standards, the potential proceedings in the UAE are far too speculative to support Applicant's request. For starters, Applicant's own foreign law expert concedes that the discovery "will allow Applicant to determine *whether and how* Browne, *possibly* with the assistance of others, executed a self-interested seizure and sale of the vessel." ECF No. 8 ("Gunson Decl."), ¶ 12 (emphases added). Moreover, even if she finds evidence to

7

support her suspicions, she could not submit it to a court. Instead, she would "file[] [it] with the UAE Federal Public Prosecution," which, in turn, would investigate only "[i]*f* the petition is deemed admissible." *Id.* ¶ 8 (emphasis added). "*If* sufficient evidence is found," Applicant's foreign law expert continues, "the UAE Federal Public Prosecution *may* proceed with formal charges." *Id.* (emphasis added). This lengthy chain of contingencies makes plain that there is no "concrete basis from which [the Court] can determine" that a proceeding in the UAE in which Applicant could make use of the requested discovery "is more than just a twinkle in counsel's eye." *Certain Funds*, 798 F.3d at 124. As in *In re Klein*, No. 23-MC-211 (PAE), 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023), the most it appears she could do is "forward the evidence" to the prosecution, "which, exercising its discretion, will decide whether to initiate a formal criminal proceeding." *Id.* at *9. That does not suffice.

    Nor do the cases upon which Applicant relies compel a different conclusion. *See* Applicant's Opp'n 15-16. In *In re Byrne*, No. 23-MC-048 (VEC), 2023 WL 3203811 (S.D.N.Y. May 2, 2023), for example, the applicant was seeking discovery relevant to an already-pending civil proceeding in addition to a contemplated criminal proceeding. *See id.* at *5. To the extent that the court relied on the contemplated criminal proceeding, the court acknowledged that the petitioner attested that he intended to file a criminal complaint "as soon as reasonably possible" and was only "await[ing] discovery" from the Section 1782 petition "to provide *further* evidence of the Liable Parties' criminal" actions, *id.* (emphasis added) — representations that Applicant has not made (and likely cannot make) here, *see* Gunson Decl. ¶ 10 (stating that Applicant will pursue criminal proceedings "once she has sufficient evidence to persuade [UAE authorities] that a prosecution will be successful"). And *Dannacher v. Cloudflare, Inc.*, No. 24-MC-80066 (SK), 2024 WL 2875097 (N.D. Cal. May 23, 2024), involved an *ex parte* application, with the "for

8

use" requirement receiving no substantive analysis. *See id.* at *3 (addressing all statutory requirements in a single sentence). Further, the district court noted that the Dubai Police Station had already opened an investigation of the underlying events at issue. *See id*. Here, by contrast, there is no open investigation. Instead, criminal proceedings in the UAE are no more than "purely hypothetical." *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127 (AJN), 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015) (Nathan, J.).

## CONCLUSION

For the foregoing reasons, the Court concludes that Applicant has not satisfied the "for use" statutory requirement for relief under Section 1782. Accordingly, Movants' motions to quash the subpoenas must be and are GRANTED, and the Court's Memorandum Opinion and Order entered on March 17, 2025, which had granted Applicant's application on an *ex parte* basis is VACATED. (The Clerk of Court can and should leave it on the docket, however, as it is part of the record in this matter.)

To be clear, the subpoenas are quashed in their entirety, notwithstanding the fact that only some of those referenced in the subpoenas have appeared and sought relief. That is because Movants' arguments demonstrate that Applicant failed to meet the statutory requirements for relief in the first instance; given that, and given that the Court granted the application on an *ex parte* basis without the benefit of adversarial testing, it would be inappropriate to allow the subpoenas to stand at all. Finally, Applicant and Movants shall promptly confer with respect to what should be done with any discovery that Applicant has already received in connection with the now-quashed subpoenas and, **within two weeks of the date of this Opinion and Order**, file an agreed-upon proposed order (or competing orders, with a redline showing the differences, and letter briefs not to exceed three pages).

The Court's decision is without prejudice to a new application for relief under Section 1782 in the event that circumstances change materially (for example, in the Antiguan proceedings) and Applicant is able to satisfy the second statutory requirement. *See In re Application of BonSens.org for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 22-MC-352, ECF No. 26 (S.D.N.Y. Feb. 14, 2023), *aff'd*, 95 F.4th 75. In the event that Applicant files a new application, she shall mark it as related to this case.

The Clerk of Court is directed to terminate ECF Nos. 21 and 30; to conform the docket to the caption on this Memorandum Opinion and Order; and to close the case.

SO ORDERED.

Dated: June 4, 2025
New York, New York

                                   JESSE M. FURMAN
                                   United States District Judge