UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF YULIA GURYEVA-MOTLOKHOV FOR AN ORDER SEEKING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. 25-mc-00098 (JMF) |

## [PROPOSED] PROTECTIVE ORDER

WHEREAS, on March 17, 2025 the Court granted an *ex parte* application by applicant Yulia Guryeva-Motlokhov ("Applicant") for international discovery assistance under 28 U.S.C. § 1782, without prejudice to any subsequent motions to quash, and approved the service of proposed subpoenas on two non-party financial institutions, the Clearing House Payments Company LLC ("the Clearing House") and the Federal Reserve Bank of New York (collectively, the "Subpoenas");

WHEREAS, Applicant served the Subpoenas on or about March 20, 2025;

WHEREAS, on April 11, 2025, intervenors Gaston Alphonso Browne; Maria Bird-Browne; Darwin Telemaque; Gaston Andron Browne III; IF Antigua Inc.; Hyacinth Harris; Ickford Roberts; Farmer DG Browne Co. Limited; Cove Head Development Limited; Cove Head Communications Limited (collectively, the "Antiguan Movants"); and the West Indies Oil Company ("WIOC") (together with the Antiguan Movants, "Intervenors") have intervened in this proceeding and filed motions to quash the Subpoenas (the "Motions to Quash");

WHEREAS, on April 28, 2025, the Court entered a stipulated Protective Order governing the receipt and use of materials produced in response to the Subpoenas;

WHEREAS, the Parties report that, on May 23, 2025, the Clearing House produced documents to counsel for Applicant in response to the Subpoena served upon it;

WHEREAS, the Parties report that, pursuant to the April 28, 2025 stipulated Protective Order, counsel for Applicant promptly transmitted to counsel for the Antiguan Movants and counsel for WIOC the information produced by the Clearing House;

WHEREAS, the Motions to Quash were granted on June 4, 2025 (the "Order");

WHEREAS, Applicant has indicated that she intends to notice an appeal of the Order;

1

and

WHEREAS, the Court finds that good cause exists for issuance of an appropriately tailored protective order,

IT IS HEREBY ORDERED that any person subject to this Protective Order—including without limitation the Parties to this proceeding, their attorneys, representatives, agents, experts and consultants, all third parties providing discovery in this proceeding, and all other interested persons with actual or constructive notice of this Protective Order —shall adhere to the following terms:

1. On the day this Order is entered, counsel for Applicant shall promptly serve the Court's June 4, 2025 Order upon the Federal Reserve Bank of New York and the Clearing House.

2. Until the Court orders otherwise, the records produced by the Clearing House on or about May 23, 2025, in response to the Subpoena served upon it shall be considered "Attorneys' Eyes Only" and shall be held subject to the conditions in this Protective Order.

3. Until the Court orders otherwise, should the Federal Reserve Bank of New York produce any records in response to the Subpoena served upon it on or about March 20, 2025, or should the Clearing House produce any additional records, counsel for Applicant shall not review such records and shall immediately forward them to the other counsel identified in paragraph 4 of this Protective Order along with a certification that counsel for Applicant did not review such records and has not retained a copy of any such records. For the avoidance of doubt, if any production by the Federal Reserve Bank of New York or the Clearing House is made by email, counsel for Applicant shall delete the records attached to or otherwise produced with such email from its email system.

4. The only persons who are authorized to hold or have access to the records produced by the Clearing House in response to the Subpoena served upon it, as referred to in paragraph 2 above, are counsel for Applicant, specifically Boies Schiller Flexner LLP; counsel for the Antiguan Movants, specifically Foley Hoag LLP, Paul S. Reichler, and Steven M. Schneebaum; and counsel for WIOC, specifically Dentons US LLP. As used herein, the term "counsel" includes all professionals, paralegals and other personnel employed, respectively, by each of the law firms or individual attorneys listed in the first sentence of this paragraph.

5. No person other than those identified in paragraph 4 is authorized to hold or have access to any records produced by the Clearing House in response to the Subpoena served upon it, as referred to in paragraph 2 above.

6. No person shall use or disclose any records produced by the Clearing House in

response to the Subpoena served upon it, as referred to in paragraph 2 above, records or their contents, for any purpose whatsoever, except to ensure compliance with the provisions of this Protective Order. Prior to making any such submission, the party seeking to make it shall seek leave to file that submission under seal.

7.     For the avoidance of doubt, no person who has access to any record produced by the Clearing House in response to the Subpoena served upon it, as referred to in paragraph 2 above, may disclose, to any person or entity, any such record or any information contained therein. In particular and without limitation, no such person shall be permitted to make any public statements about any such record or its contents (including making any social media posts). In addition, no person who receives or has access to any such record may use any such record or any information contained therein for any political, public relations, business, commercial or competitive purpose, including and without limitation, the prosecution and/or defense of any action or proceeding in the United States or abroad, current or future.

8.     Each person who is authorized to hold, or has access to, records produced by the Clearing House in response to the Subpoena served upon it, as referred to in paragraph 2 above, shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

9.     All records produced by the Clearing House in response to the Subpoena served upon it, as referred to in paragraph 2 above, shall be maintained by the counsel who hold them pursuant to this Protective Order in a manner that is secure and confidential. In the event that any such counsel experiences a data breach, it immediately shall notify the other counsel identified in paragraph 4 of this Protective Order and cooperate with them to address and remedy the breach. Nothing herein shall preclude any counsel identified in paragraph 4 from asserting legal claims or constitute a waiver of legal rights or defenses in the event of litigation arising out of the counsel identified in paragraph 4's failure to appropriately protect the records produced by the Clearing House in response to the Subpoena served upon it, as referred to in paragraph 2 above, from unauthorized disclosure.

10.    This Protective Order shall survive the termination of the litigation. If Applicant notices an appeal of the Order, then within 5 days of the issuance of the mandate of the U.S. Court of Appeals for the Second Circuit affirming the Order, each of counsel for Applicant, counsel for the Antiguan Movants and counsel for WIOC shall destroy any records produced by the Clearing House in response to the Subpoena served upon it, as referred to in paragraph 2 above, and transmit to the other counsel identified in paragraph 4 of this Protective Order a certification that such records have been destroyed and that such counsel has retained no copies of any such records.  If Applicant elects not to appeal the Order, then no later than July 11, 2025, each of counsel for Applicant, counsel for the Antiguan Movants and counsel for WIOC shall destroy any records produced by the Clearing House in response to the Subpoena served upon it,

as referred to in paragraph 2 above, and transmit to the other counsel identified in paragraph 4 of this Protective Order a certification that such records have been destroyed and that such counsel has retained no copies of any such records.

11. If Applicant notices an appeal of the Order, the conditions in this Protective Order shall continue in full force until further order of the Court.

12. Any person acting in violation of this Protective Order may be subject to punishment for contempt of Court. This Court shall retain jurisdiction over all persons subject to this Protective Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

SO ORDERED:

_____
JESSE M. FURMAN
United States District Judge

Dated: June 20, 2025

> This stipulation binds the parties to treat as confidential the documents so classified. This Court, however, has not reviewed the documents referenced herein; therefore, by so ordering this stipulation, the Court makes no finding as to whether the documents are confidential. That finding will be made, if ever, upon a document-by-document review pursuant to the procedures set forth in the Court's Individual Rules and Practices and subject to the presumption in favor of public access to "judicial documents." *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). To that end, the Court does not "so order" any provision to the extent that it purports to authorize the parties to file documents under seal without a prior court order. *See New York ex rel. Khurana v. Spherion Corp.*, No. 15-CV-6605 (JMF), 2019 WL 3294170 (S.D.N.Y. July 19, 2019).