**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE:

GASTON BROWNE CORRUPTION
DISCOVERY APPLICATION

Case No. 1:25-mc-00098

---

**DECLARATION OF MATTHEW GETZ IN SUPPORT OF RENEWED APPLICATION**
**UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY IN THIS DISTRICT FOR USE IN**
**FOREIGN PROCEEDINGS**

The undersigned, Matthew Getz, declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a solicitor of the Senior Courts of England and Wales and was admitted to practice in 2009.  I was previously admitted to the New York State Bar in 2005.  I am a partner at the law firm Pallas Partners LLP located in London, United Kingdom.

2.      I make this declaration in support of Yulia Guryeva-Motlokhov's ("Guryeva-Motlokhov") renewed application under 28 U.S.C. § 1782 (the "Application") to take discovery from the Federal Reserve Bank of New York and the Clearing House Payments Company LLC (together, the "Discovery Subjects").

3.      Except as otherwise indicated, all statements in this declaration are based upon my personal knowledge and experience, or upon my discussions with, or review of the work product of, other counsel working on behalf of Guryeva-Motlokhov.  Insofar as they are within my own knowledge, the facts and matters set forth herein are, to the best of my own knowledge and belief, true.

1

4.      In making this declaration I do not waive any applicable legal privileges.

**STATEMENT OF FACTS**

5.      I submit this Declaration to provide material updates in connection with the legal proceedings initiated in the High Court of the Eastern Caribbean Supreme Court (Antigua and Barbuda) (the "High Court") against certain officers of the Government of Antigua and Barbuda (the "Antiguan Proceedings") that were referenced in my original declaration dated March 5, 2025 (the "Original Getz Declaration") and, among other foreign proceedings, form the basis of Guryeva-Motlokhov's renewed Application.  The following information is relevant to Guryeva-Motlokhov's Application.

6.      I have direct knowledge of the Antiguan Proceedings, having acted as Guryeva-Motlokhov's legal representative since November 2022, including in relation to the confiscation of the *Alfa Nero* (the "Vessel") and the Antiguan Proceedings.  I am and have been responsible for giving instructions on Guryeva-Motlokhov's behalf to her legal representatives in Antigua ("Hill & Hill") in connection with the Antiguan Proceedings.

7.      At the date of this declaration, no decision has been issued by the High Court in connection with the Antiguan Proceedings despite the conclusion of trial over 15 months ago (in November 2024).  The High Court originally indicated that judgment would be handed down in the week commencing February 10, 2025.  However, that did not take place.  Following multiple requests by Applicant for updates in relation to the judgment, culminating in a letter from Hill & Hill dated January 8, 2026, a true and correct copy of which is attached hereto Exhibit 1, the Registrar of the High Court informed Hill & Hill that the Court intended to deliver judgment on February 10, 2026.  Attached hereto as Exhibit 2 is a true and correct of the email from the Registrar of the High Court dated January 13, 2026. Delivery of the judgment is now held pending

2

the High Court's determination of Guryeva-Motlokhov's application to adduce fresh evidence obtained pursuant to Guryeva-Motlokhov's § 1782 Application in the Southern District of Florida ("SDFL Evidence")[1] in the Antiguan Proceedings, which was heard by the High Court on March 30, 2026 and at which hearing the Court reserved judgment.  Counsel for Flying Dutchman Overseas Limited, who had been unable to attend the hearing on March 30, 2026, was subsequently heard by the Court on April 20, 2026.  The Court is set to issue a decision on the application on May 15, 2026.  Judgment remains reserved on both the application to adduce fresh evidence and the substantive claims.

8.      Applicant has sought to introduce the SDFL Evidence into evidence in the Antigua Proceedings.  Applicant submitted a corresponding Notice of Application in the High Court on January 30, 2026, requesting judicial permission to introduce documents and, on March 9, 2026, submitted an amended Notice of Application to also include further documentary evidence, pursuant to the below procedure.

9.      As a matter of Antiguan law and procedure, any evidence which comes to light pursuant to this Application can be used either before or after issuance of the High Court's judgment.  In both scenarios, parties must seek judicial permission to admit the new evidence and, as described below, must use reasonable diligence to do so as soon as possible upon discovering the new evidence.

10.     I note that if the High Court issues a judgment adverse to Applicant's case on the lawfulness of the sale and seizure of the Vessel, Applicant intends to appeal such judgment to the Court of Appeal of the Eastern Caribbean Supreme Court (the "Court of Appeal"), and, if again unsuccessful, thereafter to the Judicial Committee of the Privy Council in London, which serves

---

[1] *In re Browne*, 2025 WL 1984291 (S.D. Fla. July 17, 2025).

as the highest court of appeal for matters of this type commencing in the High Court.  Applicant

can appeal a judgment of the High Court or Court of Appeal as of right.  Applicant would wish to

use any evidence obtained pursuant to this Application in any such appeal, so she must not delay

in seeking the permission of the High Court to admit the evidence.

### Legal Test to Adduce Fresh Evidence

11.      As a matter of procedure, Applicant must seek the permission of the High Court

(or, if relevant, any appeal court) to adduce new evidence in accordance with the High Court's

powers to make orders for the purpose of managing the case and furthering the overriding objective

(rule 26.1(2)(y) of the Eastern Caribbean Supreme Court Civil Procedure Rules 2023 (the "CPR")).

The Court may also have regard to the duty to actively manage cases so as to further the overriding

objective (CPR rule 25.1).

12.      The Court will also have regard by analogy to the principles set out in *Ladd v

Marshall* [1954] 1 WLR 1489, which govern the admissibility of fresh evidence on appeal.  These

principles provide that fresh evidence will usually be admitted on appeal if three conditions are

satisfied:

  a.   The evidence could not with reasonable diligence have been obtained for use at

      the trial;[2]

  b.   The evidence, if adduced, would have an important influence on the result of

      the case, though it need not be decisive; and

  c.   The evidence must be credible (in the sense of being capable of belief), though

      it need not be incontrovertible.

---

[2] *Ladd v Marshall* [1954] 1 WLR 1489, at 1491.

13.     Since judgment has not yet been entered, the *Ladd v Marshall* principles are only to be considered in this case by way of analogy, with the necessary adjustments being made.  In particular, considerations of finality, whilst still relevant, have less weight where the application to adduce fresh evidence is made before judgment rather than after.

14.     As outlined in paragraphs 15-17 of the Original Getz Declaration, the discovery received by Applicant under 28 U.S.C. § 1782 fulfills all criteria required under *Ladd v. Marshall*: (1) there was no way for Applicant to have received the evidence with reasonable diligence for use at trial because the evidence was not located in Antigua; (2) the evidence would have an important influence on the case as it directly relates to the claims brought by Applicant; and (3) the evidence is credible as it came directly from the brokers involved in the sale of the *Alfa Nero*.

15.     I believe that further relevant evidence obtained pursuant to this Amended Application would likely be admitted by the High Court and, if necessary, on appeal to the Court of Appeal, depending on the reasons for a judgment against Guryeva-Motlokhov.

16.     In that regard, I understand that, through this Application, the Applicant seeks financial transfer information from certain financial institutions regarding Browne, certain members of his inner circle, and those individuals and entities known, or reasonably believed to be involved in the sale.

17.     I have reviewed the Application, and in my assessment, the Requested Discovery will permit the Applicant to identify critical details about the confiscation and sale of the *Alfa Nero* and the disposition of the proceeds of the same.  Specifically, I expect that financial records for the *Alfa Nero*'s sale and/or charter will identify the individuals and entities who benefitted from the Vessel's seizure and sale, and may show financial transfer information for Browne and his inner circle that identify the individuals and entities that acted on Browne's behalf and for his benefit.

18.    This information would be germane to the Applicant's case in the Antiguan Proceedings as follows.

   a.  Article 9(1) of the Constitution provides: *"No property of any description shall be compulsorily taken possession of, and no interest in or right to or over property of any description shall be compulsorily acquired except for public use and except in accordance with the provisions of a law applicable to that taking of possession or acquisition and for the payment of fair compensation within a reasonable time."*

   b.  Article 9(4) states that laws passed or actions taken for certain purposes will not be inconsistent with article 9(1), including, relevantly, at article 9(4)(a)(v), *"where it is reasonably necessary so to do because the property is in a dangerous state or likely to be injurious to the health of human beings, animals or plants."*

   c.  But article 9(4) provides further that such exception will not apply if the action taken *"is shown not to be reasonably justifiable in a democratic society."*

   d.  The leading Privy Council case regarding whether matters are reasonably justifiable in a democratic society is *De Freitas v Permanent Secretary of Ministry of Agriculture, Fisheries, Lands and Housing* [1999] AC 69 (PC), which was relied on heavily in the Antiguan Proceedings.

   e.  In determining this issue, the Privy Council ruled that the question is *"whether: (i) the legislative objective is sufficiently important to justify limiting a fundamental right; (ii) the measures designed to meet the legislative objective*

*are rationally connected to it; and (iii) the means used to impair the right or freedom are no more than is necessary to accomplish the objective.*"[3]

      f.    The Requested Discovery would be germane to the first limb of *De Freitas*: whether the legislative objective was sufficiently important.  If the Requested Discovery shows that Browne and his circle benefited and were intended to benefit from the confiscation and sale of the Vessel, that would indicate that the legislative objective was to profit individual members of the Antiguan Government.  Such an objective is not only not sufficiently important to justify the confiscation of valuable property without compensation, but is not even a legitimate legislative objective.

19.    None of the custodians of the Requested Discovery are party to the Antiguan Proceedings.  Moreover, the Applicant does not intend to add any of the custodians of the Requested Discovery to the Antiguan Proceedings.

20.    As detailed above, the High Court and the Court of Appeal allow for the submission of fresh evidence if the relevant criteria are met.

Dated:      London, UK
              April 28, 2026

                              Matthew Getz

_____

[3] *De Freitas* at 80G.

7